# United States Court of Appeals for the Federal Circuit

2008-1317

LAI SERVICES, INC.

Appellant,

v.

Robert M. Gates, SECRETARY OF DEFENSE,

Appellee.

Thomas L. McGovern III, Hogan & Hartson L.L.P., of Washington, DC, argued for appellant. With him on the brief was Todd R. Overman.

David M. Hibey, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With him on the brief were Gregory G. Katsas, Assistant Attorney General; Jeanne E. Davidson, Director; and Kirk T. Manhardt, Assistant Director. Of counsel on the brief were Daniel K. Poling, Associate General Counsel, Defense Logistics Agency, of Fort Belvoir, Virginia, and Michael P. Mahoney, Associate General Counsel, Defense Contract Management Agency, of Alexandria, Virginia.

Appealed from: Armed Services Board of Contract Appeals

Administrative Judge David W. James, Jr.

# United States Court of Appeals for the Federal Circuit

2008-1317

LAI SERVICES, INC.,

Appellant,

v.

Robert M. Gates, SECRETARY OF DEFENSE,

Appellee.

Appeal from the Armed Services Board of Contract Appeals in No. 54904, Administrative Judge David W. James, Jr.

_____

DECIDED:  July 24, 2009

_____

Before SCHALL, BRYSON, and LINN, Circuit Judges.

SCHALL, Circuit Judge.

This case arises under the Contract Disputes Act of 1978, as amended, 41 U.S.C. §§ 601–613.  LAI Services, Inc.[1] ("LAI" or "Appellant") appeals the December 31, 2007 decision of the Armed Services Board of Contract Appeals ("ASBCA" or "Board"), denying LAI's claim for additional compensation under its contract with the Department of Defense for materiel distribution services at the Defense Distribution Depot in San Diego, California.  Labat-Anderson, Contract No. SP0710-02-D-7005,

_____
[1]  LAI Services, Inc. proceeded under the name Labat-Anderson, Inc. before the Board and during briefing and oral argument before this court.  For consistency, we have used LAI to designate Labat-Anderson, Inc. throughout this opinion.

ASBCA Nos. 54904, 54905, 54906, 08-1 BCA ¶ 33,761 (Dec. 31, 2007) ("ASBCA Decision"). In denying LAI's claim, the Board rejected LAI's contention that billing and payment for "minimum military packing" of off-base transshipments was to be under contract line item ("CLIN") 0002 rather than CLIN 0001. On appeal, LAI argues that the Board erred in its determination as to which CLIN governed billing and payment for minimum military packing of off-base transshipments. In addition, addressing a matter presented to the Board but not decided by it, LAI urges us to hold that payment under CLIN 0002 was to be on a per-item rather than per-package basis.

For the reasons set forth below, we hold that under the plain language of the contract, billing and payment for minimum military packing of off-base transshipments was to be under CLIN 0002 rather than CLIN 0001. We hold also that billing and payment under CLIN 0002 was to be on a per-package, not per-item, basis. We therefore reverse the decision of the Board and remand the case to the Board for a determination of the compensation to which LAI is entitled when (1) CLIN 0002 is used for billing and payment for minimum military packing of off-base transshipments and (2) billing and payment under CLIN 0002 is on a per-package rather than per-item basis.

BACKGROUND

I.

The pertinent facts are not in dispute. On August 15, 2000, the Defense Supply Center, Columbus, Ohio issued a solicitation for proposals for materiel distribution services at the Defense Distribution Depot in San Diego, California ("DDDC"). ASBCA Decision, 08-1 BCA ¶ 33,761, at ¶ 1. DDDC handles and distributes aviation-related parts and a range of other military items. The solicitation contemplated a hybrid fixed-

price, cost-reimbursement, indefinite delivery, indefinite quantity basis contract, with a minimum thirty-six month base period, and a twenty-four month option period.  Id.

LAI was awarded the DDDC contract on August 9, 2002.  ASBCA Decision, 08-1 BCA ¶ 33,761, at ¶ 24.  Under the contract, it was required to receive, label, pack, store, and deliver various items to meet military needs both on-base and off-base.

LAI's contract was organized into several sections.  Two of those sections are relevant to this appeal. Section B of the contract stated the prices for each of the different contract tasks.  Each price category was identified using a different CLIN. Section C, the Performance Work Statement ("PWS"), set forth definitions of various contract terms and stated each of the tasks LAI was to perform.  Section B, the pricing section of the contract, did not mention tasks by name.  Rather, it listed each CLIN number, then referred to the subsections within Section C, the PWS, that fell within that CLIN.  For example, Section B provided in relevant part as follows with respect to CLIN 0001:

| CLIN | | UNIT PRICE |
|------|---|------------|
| | . . . . | PER LINE |
| 0001 | DISTRIBUTION SERVICES: C-1 thru C-6, unless noted below | $5.87 |
| | . . . . | |

Contract performance began on March 1, 2003.  Under the contract, LAI packed both "mission stock" and "transshipments."  "Mission stock" items were items owned and stored by DDDC itself, and recorded in the depot's inventory until shipped to a military customer.  By contrast, "transshipments" referred to items sent from another

organization to DDDC, then quickly processed and sent to a second military entity. (For example, computers from Dell could be sent to DDDC and then shipped to another military facility.) Because transshipment items were never formally in the depot's inventory, they were also referred to as "non-accountable" materiel.

Items could be sent to locations at DDDC, or to locations off-base. Further, items that had to be packed before shipment could face different environmental concerns and therefore have different packaging needs. The three levels of packaging relevant to this appeal are Levels A and B and minimum military packing, or "MMP" (formerly known as Level C). MMP was used if the shipment would "not be exposed to shipping environments more severe than those normally encountered in the commercial distribution system." Level A and Level B packing were used for shipments that would be exposed to harsher shipping environments.

During the period of contract performance, a dispute arose over the proper CLIN for billing and payment for MMP of off-base transshipments. Beginning with its first invoice, LAI billed for MMP of off-base transshipments under CLIN 0002. ASBCA Decision, 08-1 BCA ¶ 33,761, at ¶¶ 34–39. CLIN 0002 had a unit price of $25.34 and stated that billing should be "per each."[2] LAI took that to mean it should bill on a per-item basis. The government took the position that MMP transshipments should be billed under CLIN 0001 (unit price of $5.87) and that under CLIN 0001, billing and payment was on a per-line basis. It thus denied a portion of the charges documented on LAI's invoice.

---

[2] The price was later raised to $26.03 per each through a bilateral modification. ASBCA Decision, 08-1 BCA ¶ 33,761, at ¶ 33.

LAI continued to bill for minimum military packing of off-base transshipments using CLIN 0002. For its part, the government adhered to the position that MMP of off-base transshipments was properly billed under CLIN 0001, paying LAI accordingly. On August 24, 2004, LAI filed a claim with the contracting officer to obtain the difference between what it claimed it was entitled to under the contract and what the government had paid it for MMP of off-base transshipments. LAI periodically supplemented its claim, as each monthly invoice accumulated new disallowed charges. The contracting officer denied the claim in its entirety on December 13, 2004. The thirty-six month base period of the DDDC contract came to an end on February 28, 2006, and the contract terminated when the government chose not to exercise the two-year option.

II.

LAI timely appealed the contracting officer's final decision to the ASBCA on January 25, 2005. Relevant to the appeal before us, LAI claimed it was entitled to compensation for MMP of off-base transshipments under CLIN 0002, rather than CLIN 0001. Appellant's Br. 1. LAI also claimed that, under CLIN 0002, it was entitled to payment on a per-item basis. LAI's claim for the entire three-year contract period was in the amount of $11.3 million.

After conducting a four-day hearing, the Board denied LAI's claims on several alternative grounds. Addressing the issue of the proper CLIN for MMP of off-base transshipments, the Board found a patent ambiguity between two provisions of the PWS. According to the Board, Section 5.4.1.3 of Section C, the PWS, supported the government's interpretation of the contract (and billing under CLIN 0001), whereas Section 5.5.1 of Section C supported LAI's interpretation (and billing under CLIN 0002).

<u>ASBCA Decision</u>, 08-1 BCA ¶ 33,761, slip op. at 18–19. This patent ambiguity triggered a duty on LAI's part to inquire as to the proper contract interpretation. As LAI conceded it had not made such an inquiry, the Board held that LAI's claim failed.

In the alternative, the Board ruled that if there was not a patent ambiguity between Sections C-5.4.1.3 and C-5.5.1, there was a latent ambiguity between the two provisions. <u>ASBCA Decision</u>, 08-1 BCA ¶ 33,761, slip op. at 19–20. According to the Board, LAI's interpretation was not within the "zone of reasonableness," and further, LAI did not prove it relied on its interpretation at the time it entered into the contract. <u>Id.</u> Therefore, the Board found LAI's reading would fail even under a latent ambiguity theory.

Because the Board held that billing and payment for MMP of off-base transshipments were properly under CLIN 0001, it did not have to address LAI's contention that, under CLIN 0002, billing and payment were on a per-item rather than a per-package basis, since there was no dispute as to the proper method of billing under CLIN 0001. <u>Id.</u> at 20. LAI has timely appealed the Board's decision. We have jurisdiction over final decisions of the ASBCA under 28 U.S.C. § 1295(a)(10) and 41 U.S.C. § 607(g)(1).

DISCUSSION

I.

On appeal, LAI presents the same two issues of contract interpretation that it raised before the Board: (1) whether, under the DDDC contract, MMP of off-base transshipments was properly billed under CLIN 0002 or CLIN 0001; and (2) if billing properly was under CLIN 0002, whether it was on a per-item or per-package basis.

"Contract interpretation is a question of law over which we exercise complete and independent review." Textron Def. Sys. v. Widnall, 143 F.3d 1465, 1468 (Fed. Cir. 1998); see also 41 U.S.C. § 609(b); Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1305 (Fed. Cir. 1996). In addition, "[c]onstruction of the language of the contract to determine whether there is an ambiguity is a question of law which we review without deference." Gardiner, Kamya & Assocs., P.C. v. Jackson, 467 F.3d 1348, 1353 (Fed. Cir. 2006). At the same time, "whether ambiguities are latent or patent and whether the contractor's interpretation thereof is reasonable are also questions of law subject to de novo review." Interwest Constr. v. Brown, 29 F.3d 611, 614 (Fed. Cir. 1994). The Board's fact findings "shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. § 609(b). As noted above, in this case the pertinent facts are not in dispute.

II.

A.

The main issue on appeal is whether, under the DDDC contract, billing and payment for minimum military packing of off-base transshipments properly came under CLIN 0001 or 0002. CLINs 0001 and 0002, which were in Section B of the contract, provided in relevant part as follows:

| CLIN | CLIN 0001 is to be priced as a fixed unit price per line. | UNIT PRICE PER LINE | FORECAST | TOTAL |
|---|---|---|---|---|
| 0001 | DISTRIBUTION SERVICES: C-1 thru C-6, unless noted below Minimum Estimated Quantity: 1,985,864 Line Items Received and Issued over the Base Period | $5.87 | 2,643,720 | $15,518,636 |

of 36 Months

. . . .

| | | UNIT PRICE | | |
|---|---|---|---|---|
| CLINs 0002, 0003, 0004 and 0005 are to price [sic] as a fixed unit price per each | | | | |
| | | EACH | FORECAST | TOTAL |
| 0002 | PPP&M: C-5.5.1 | $25.34 | 165,085 | $4,183,254 |

As seen from the text, CLIN 0001 was a catch-all provision, because all items from Section C (C-1 thru C-6) were to be billed under it "unless noted below" in another CLIN number.

As noted, the Board found a patent ambiguity between Section C-5.4.1.3 and Section C-5.5.1 of the DDDC contract. Section 5.4.1.3, "**Packing**," was a subsection of Section C-5.4.1, which was titled "**REQUIREMENTS**." Section C-5.4.1.3 was not mentioned under any Section B CLIN number. Therefore, work performed under it was to be billed under CLIN 0001, because the work was not "noted below" under another CLIN. Section C-5.5.1, "**PRESERVATION, PACKAGING, PACKING AND MARKING (PPP&M)**," was a subsection of Section C-5.5, which was titled **SPECIAL FUNCTIONS**. As seen above, work under it was to be billed under CLIN 0002.

Section C-5.4.1.3 provided, in relevant part:

**5.4.1.3 Packing** and packaging shall be accomplished to minimum military requirements . . . . Section C-5.5.1, PPP&M, addresses packing requirements for repairable items with G & F condition codes needing minimum military packing, and all items needing above minimum military packing.

Within Section C-5.4.1, off-base transshipments were defined as follows:

**5.4.1.6 Off-base Transshipments** are materiel received by the PA[3] for non-local customers which require further packaging and/or labeling of materiel. . . .

---

[3] "PA" refers to the contractor, in this case, LAI.

Section C-5.5.1 provided, in relevant part:

**5.5.1 PRESERVATION, PACKAGING, PACKING AND MARKING (PPP&M)**

. . . .

The PA shall perform PPP&M on
- Materiel to be shipped, off-base transshipments, MTIS, and for special packaging support, to include non-routine COSIS.[4]
- Materiel received from organic repair facilities (NADEP) or commercial vendors

. . . .

The applicable levels of protection are Level A, Level B and minimum military packing (formerly known as Level C) . . . .

PPP&M requirements shall be performed prior to transshipments of non-accountable materiel. The PA shall protect PPP&M non-accountable material during transportation. The PA shall process PPP&M off-base transshipments for expedited packing and shipping based on customer needs.

The Board determined that Sections C-5.4.1.3 and C-5.5.1 were in conflict. The Board noted that Section C-5.4.1.3 (covered by CLIN 0001) stated that Section C-5.5.1 "addresses packing requirements for repairable items with G & F condition codes needing minimum military packing, and all items needing above minimum military packing." ASBCA Decision, 08-1 BCA ¶ 33,761, at ¶ 18. Thus, the Board reasoned, transshipments should not have been billed under CLIN 0002 ("PPM: C-5.5.1") unless they were packed at a level above MMP, as urged by the government. The Board also noted, however, that Section C-5.5.1 provided that the "applicable levels of protection are Level A, Level B and minimum military packing" for a host of items, including "off-base transshipments." Id., slip op. at 19. This, the Board reasoned, supported LAI's

---

[4] "MTIS" refers to "materiel turned-in to store," see Section C-5.2.1 of the contract, while "COSIS" refers to "care of supplies in storage," see Section C-5.3.1.1 of the contract.

contention that off-base transshipments requiring MMP were covered under Section C-5.5.1 and thus were properly billed under CLIN 0002. The Board concluded that, under these circumstances, there was a facial, patent ambiguity between Sections C-5.4.1.3 and C-5.5.1 of the contract. In view of that ambiguity, LAI had a duty to inquire into the proper interpretation of the contract terms. See NVT Techs., Inc. v. United States, 370 F.3d 1153, 1162 (Fed. Cir. 2004) ("If the ambiguity is patent, it triggers a duty to inquire."). As it did not, it was bound to accept the government's interpretation of the contract. Id. ("If an ambiguity is obvious and a bidder fails to inquire with regard to the provision, his interpretation will fail."). Accordingly, the Board ruled that LAI was properly paid for MMP of off-base transshipments under CLIN 0001.

B.

On appeal, LAI maintains that the plain language of Sections C-5.4.1.3 and C-5.5.1 supports its interpretation of the contract, and there was thus no ambiguity. First, LAI notes that CLIN 0001 refers to the entire PWS (C-1 thru C-6), "unless noted below" (in another CLIN). Appellant's Br. 12–13. LAI points out that Section C-5.5.1 was specifically "noted below," because it was referenced in CLIN 0002. Thus, according to LAI, anything that was included in Section C-5.5.1 was automatically removed from the purview of CLIN 0001, regardless of whether another provision covered by CLIN 0001 might be read to describe the same task.

Continuing, LAI argues that packing of off-base transshipments, regardless of the packing level, was only described in Section C-5.5.1, and that the government's attempt to read ambiguity into the contract thus is flawed. LAI notes the multiple references to tasks involving off-base transshipments in Section C-5.5.1:

- The PA shall process PPP&M <u>off-base transshipments</u> for expedited <u>packing</u> and shipping based on customer needs. (emphasis added);
- The PA shall perform PPP&M on [m]ateriel to be shipped, <u>off-base transshipments</u>, MTIS, and for special packaging support, to include non-routine COSIS. (emphasis added); and
- PPP&M requirements shall be performed prior to <u>transshipments of non-accountable materiel.</u> The PA shall protect PPP&M nonaccountable materiel during transportation. (emphasis added).

Appellant's Br. 16–17. LAI contrasts these references to the full text of Section C-5.4.1.3, which did not mention packing of transshipments. LAI argues that, rather than viewing the last sentence of Section C-5.4.1.3, ("Section C-5.5.1, PPP&M, addresses packing requirements for repairable items with G & F condition codes needing minimum military packing, and all items needing above minimum military packing."), as limiting Section C-5.5.1, one should read Section C-5.4.1.3 as providing examples of what fell within each packing category and corresponding CLIN number. Even if MMP of off-base transshipments was theoretically covered by two sections, LAI argues, the "unless noted below" language of Section B CLIN 0001 removed any potential inconsistency or overlap.

The government does not advocate the patent ambiguity approach taken by the Board. Rather, it contends that its reading of the contract, not LAI's, is supported by the plain language of Sections C-5.4.1.3 and C-5.5.1. Focusing on the first and last sentences of Section 5.4.1.3, the government argues that MMP of off-base transshipments is only covered by CLIN 0001. Appellee's Br. 15–16. The first sentence of Section 5.4.1.3, the government notes, reads, "Packing and packaging shall be accomplished to minimum military requirements." The government argues that this

sentence requires that MMP come under Section C-5.4.1.3 and hence be billed under CLIN 0001. Reading that sentence in conjunction with the section's last sentence, ("Section C-5.5.1, PPP&M, addresses packing requirements for repairable items with G & F condition codes needing minimum military packing, and all items needing above minimum military packing."), the government urges that MMP fell under Section C-5.4.1.3 unless it involved items with "G & F condition codes."

The government then turns to Section C-5.5.1. As seen, Section C-5.5.1 provides that the contractor "shall perform PPP&M on materiel to be shipped, <u>off-base transshipments</u>, MTIS, and for special packaging support, to include non-routine COSIS" (emphasis added). The government argues that this sentence simply serves as an introduction to Section C-5.5.1, indicating the types of items that <u>could</u> receive PPP&M in some circumstances, not the items that <u>had to</u> receive PPP&M at all times. The government contends that LAI's reading of the contract—that all MMP of off-base transshipments was covered by Section C-5.5.1—would lead to an absurd result, because LAI acknowledges that it billed the government under CLIN 0002 for only some "materiel to be shipped," the first category of items listed in Section C-5.5.1.[5] Thus, the government argues that, in effect, LAI seeks to graft additional words onto Section C-

---

[5]   The following exchange took place at oral argument:

> **The Court:** "The government's argument is that you're arguing that that means some material to be shipped and all off-base transshipments. You're saying 'no, it means some and some.' Is that right? Is that a fair representation?"
>
> **LAI:** "Yes, your honor. Absolutely."

Oral Arg. 8:03–8:14, Feb. 5, 2009, <u>available at</u>
http://oralarguments.cafc.uscourts.gov/mp3/2008-1317.mp3.

5.5.1. According to the government, LAI would have us read Section C-5.5.1 as stating that the contractor "shall perform PPP&M on [some] materiel to be shipped, [and all] off-base transshipments." Appellee's Br. 17–18.

Finally, the government reasons that LAI's argument creates a patent ambiguity in the contract because LAI construes Section C-5.5.1 as requiring PPP&M for all packing levels of off-base transshipments, whereas, according to the government, the language of Section C-5.4.1.3 indicates PPP&M was only required for off-base transshipments packed to Level A or B. See Section C-5.4.1.3 ("Section C-5.5.1, PPP&M, addresses packing requirements for repairable items with G & F condition codes needing minimum military packing, and all items needing above minimum military packing.").[6]

C.

"In resolving disputes involving contract interpretation, we begin by examining the plain language of the contract." M.A. Mortenson, 363 F.3d at 1206; see also Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). We construe a contract "to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract." Hercules, Inc. v. United States, 292 F.3d 1378, 1381 (Fed. Cir. 2002). The threshold question here is whether the plain language of the contract "supports only one reading

---

[6]    We do not view the government as making a true patent ambiguity argument, because "[a] patent ambiguity is present when the contract contains facially inconsistent provisions." M.A. Mortenson v. Brownlee, 363 F.3d 1203, 1207 (Fed. Cir. 2004) (internal quotation marks omitted, emphasis added). Indeed, "[t]he patent ambiguity doctrine . . . requires no actual knowledge of the other party's interpretation, and only imputed recognition of the ambiguity itself." HPI/GSA 3C, LLC v. Perry, 364 F.3d 1327, 1337 n.9 (Fed. Cir. 2004). Rather than arguing there was a facial inconsistency in the contract, the government contends that "[LAI's] interpretation of the relationship between C-5.4.1.3 and C-5.5.1 creates a patent ambiguity." Appellee's Br. 21 (emphasis added).

or supports more than one reading and is ambiguous," <u>NVT Techs.</u>, 370 F.3d at 1159, as held by the Board. Ambiguity exists when contract language can reasonably be interpreted in more than one way. <u>Metric Constructors, Inc. v. NASA</u>, 169 F.3d 747, 751 (Fed. Cir. 1999). We conclude that, insofar as the issue of payment for MMP of off-base transshipments is concerned, the contract as a whole is only reasonably susceptible to LAI's reading. Thus, no ambiguity exists.

In determining which CLIN was appropriate for MMP of off-base transshipments, one must first look to the billing provisions in Section B. Section B provides that items must be billed under CLIN 0001, unless they are "noted below" in another CLIN (Section C-5.5.1 is specifically listed in CLIN 0002). As the plain language of Section C-5.5.1 covers MMP of off-base transshipments, they fall within CLIN 0002, not within CLIN 0001. The opening paragraph of Section C-5.5.1 states that the contractor "shall perform PPP&M on . . . off-base transshipments." This statement is made without any qualification as to level of packing or repair code. Further, Section C-5.5.1 provides that "PPP&M requirements shall be performed prior to transshipments of non-accountable materiel. . . . The PA shall process PPP&M off-base transshipments for expedited packing and shipping based on customer needs." Again, the provision has no limitation as to the level of packing. Furthermore, Section 5.5.1 states that an applicable level of protection for PPP&M is "Minimum Military Packing." Section C-5.5.1 also states that PPP&M must conform "to an acceptable level of packaging protection to meet packing specifications, MIL-STD-2073-1C, Standard Practice for Military Packaging and subsequent updates and Special Packaging Instructions (SPI)." The SPI includes MMP

on the list of acceptable packing levels.[7] In short, nothing in the plain language of Section C-5.5.1 limits PPP&M of off-base transshipments to those transshipments receiving A and B level packing, as concluded by the Board. As MMP of off-base transshipments fell within Section C-5.5.1, such transshipments were "noted below" for the purposes of Part B. Thus, they should have been billed and paid for under CLIN 0002. In sum, we hold that the plain language of the contract compels the conclusion that billing and payment for MMP of off-base transshipments was governed by CLIN 0002.

We do not agree with the government that LAI's reading of the contract creates a conflict, or patent ambiguity, between Sections C-5.4.1.3 and C-5.5.1. A conflict/patent ambiguity would only exist if Section C-5.4.1.3 were read as limiting the scope of Section C-5.5.1. In other words, for there to be an ambiguity, the language in Section C-5.4.1.3, which reads "Section C-5.5.1, PPP&M, addresses packing requirements for repairable items with G & F condition codes needing minimum military packing, and all items needing above minimum military packing," would have to mean that Section C-5.5.1 covered only those categories, and no others. However, Section C-5.4.1.3 contains no such limitation. Moreover, the plain language of Section C-5.5.1 makes clear that the items receiving PPP&M are not limited to those items listed in Section C-5.4.1.3. For example, Section C-5.5.1.1 states that the contractor "shall perform PPP&M for each COSIS exceeding minor repair . . . ." This provision makes no mention of G or F repair codes, or a requirement of A or B level packing. Additionally, while

---

[7] The SPI provides, in relevant part: "<u>Minimal packing requirements</u>. When anticipated logistics paths indicate that items . . . will not be exposed to shipping environments more severe than those normally encountered in the commercial distribution system, military packing requirements need not be implemented."

Section C-5.5.1 mentions MTIS generally, nowhere does it limit MTIS PPP&M to G and F condition codes or A and B level packing. Indeed, it states that "[t]he applicable levels of protection are Level A, Level B, and Minimum Military Packing (formerly known as Level C)." Also, Section C-5.5.1.2 of the contract provides that the contractor "shall perform PPP&M on assets received from organic repair facilities (NADEP)." Section C-5.5.1.2 further states that the contractor "shall perform PPP&M on assets in a manner that conforms to the acceptable level of packaging protection IAW [in accordance with] paragraph C-5.5.1," which includes minimum military packing. Again, there is nothing that limits NADEP PPP&M to A and B level packing, or G and F repair codes. These provisions indicate that the list provided in Section C-5.4.1.3 does not limit C-5.5.1 and is not an exclusive list of all items receiving PPP&M.

Neither do we agree with the government's argument that LAI's reading requires us to improperly add language to Section C-5.5.1. Under LAI's interpretation of the contract, not all off-base transshipments would require PPP&M. At oral argument the following exchange took place between the court and counsel for LAI:

> **The Court:** Would there be something that would be a transshipment which would not be subject to PPP&M?
>
> **Counsel:** If it didn't need to be packed.
> . . . .
>
> **The Court:** So if you had a transshipment, but you didn't have to pack it, you wouldn't charge it under CLIN 0002?
>
> **Counsel:** That is correct.

Oral Arg. 7:25–7:57. Therefore, LAI does not seek to modify the language to read that the contractor "shall perform PPP&M on" some "materiel to be shipped," and all "off-base transshipments." Rather, PPP&M is still only being performed on some materiel to

be shipped and <u>some</u> off-base transshipments.  Therefore, LAI's reading of the clauses in Section 5.5.1 is consistent.

As we have stated, "'[t]he doctrine of patent ambiguity is an exception to the general rule of <u>contra proferentem</u>, which courts use to construe ambiguities against the drafter.'" <u>Blue & Gold Fleet, L.P. v. United States</u>, 492 F.3d 1308, 1313 (Fed. Cir. 2007) (quoting <u>E.L. Hamm & Assocs. Inc. v. England</u>, 379 F.3d 1334, 1342 (Fed. Cir. 2004)). For that reason, the bar to proving patent ambiguity is high, and the inconsistency must be so "obvious, gross, [or] glaring, so that plaintiff contractor had a duty to inquire about it at the start."  <u>NVT Techs.</u>, 370 F.3d at 1162 (internal quotation marks omitted, alteration in original).  For the reasons we have discussed, contrary to the Board's holding, there was no such ambiguity in this case.  The clear language of the contract supports LAI's reading of the requirements of the contract with respect to CLIN 0001 and CLIN 0002.

III.

A.

Having concluded that billing and payment for MMP of off-base transshipments was governed by CLIN 0002, we turn to the second issue raised by LAI on appeal.  As noted, the pricing structure for CLIN 0002 was set forth in Section B of the DDDC contract as follows:

| CLINs 0002, 0003, 0004 and 0005 are to price [sic] as a fixed unit price per each | UNIT PRICE | | |
|---|---|---|---|
| | EACH | <u>FORECAST</u> | <u>TOTAL</u> |
| 0002    PPP&M: C-5.5.1 | $25.34 | 165,085 | $4,183,254 |

LAI contends that "each," which is not defined in the contract, means "unit of issue" or "item," rather than each packaging unit. LAI argues that had the government meant to price per container, the CLIN would have specified billing "per container" or "per PPP&M action." LAI notes that the other CLIN numbers billed by "each" "relate to particular items of supply," (for example, CLIN 0004 is billed per "each" boat, and CLIN 0005 is billed per "each" engine). Appellant's Br. 56–57. To demonstrate that the government was on notice of its interpretation, LAI references a document sent to the government during negotiations, specifying that LAI's "assumptions relating to bin, medium bulk and heavy bulk sizes are for each bare item." According to LAI, the government even approved some billing of multiple "eaches" per container, despite the fact it refused to pay a significant portion of the CLIN 0002 charges. Id. at 60. From an economic standpoint, LAI argues it had to charge per item for packing multiple items in the same package in order to counterbalance the money it lost packing large items, such as boats and engines.

The government counters that "each" refers to each PPP&M action or container. Pointing to the language of Section B, the government argues that because CLIN 0002 is titled "PPP&M," the language "price[d] as a fixed unit price per each" for CLIN 0002 must refer back to the title PPP&M. Appellee's Br. 43. Thus, "each" means each PPP&M activity. The government argues in addition that LAI's reading of the contract led to "absurd" results. For example, in August of 2004, LAI packed 4862 waterproof bags in one container, and billed the government $126,557.86 for those items. Appellee's Br. 42. The packing took LAI only fifteen minutes, however.

The government also points to a pre-award question asked by a prospective offeror and the government's corresponding answer. The question and answer were included in an amendment to the solicitation and became part of the final contract.

**Q:** CLIN 0002 . . . appear[s] to ask for a unit price per container.
Does this CLIN include both labor and material costs?

**A:** Yes.

Appellee's Br. 47. The government argues that had it not wanted to bill per container, it would have corrected the prospective contractor, rather than simply affirming its interpretation. Further, according to the government, this exchange put LAI on notice as to the appropriate billing structure for CLIN 0002.

B.

As a threshold matter, we believe it is appropriate for us to address the billing structure under CLIN 0002, although the matter was not resolved by the Board. There was extensive testimony taken on the issue, and the Board made fact-findings relating to the issue. However, because the Board rejected LAI's claim that billing and payment for MMP of off-base transshipments was under CLIN 0002, there was no need for it to continue and interpret the basis by which LAI should be compensated under CLIN 0002.

Even though the Board did not reach this issue, both parties urge us to decide it in the event we rule in LAI's favor on the CLIN 0001 versus CLIN 0002 issue, which is what we have done. In addition, we have noted the propriety of reaching issues in the interest of judicial efficiency when remand is unlikely to produce additional facts or guidance. See, e.g., Cienega Gardens v. United States, 331 F.3d 1319, 1337 (Fed. Cir. 2003) ("We are able to make this decision for the [plaintiffs] outright, instead of simply remanding the case for further analysis for several reasons: (1) the extensive fact-

finding already completed for these plaintiffs . . . [and] (2) our ability to construe the relevant contracts . . . as a matter of law because there are no disputed facts pertaining to these sources, only disputed implications . . . .").

## C.

We conclude that the government's interpretation of the contract on this issue is correct. LAI properly observes that "each" is not defined within the contract, and is not used or explained in provisions outside of Section B. However, reading the contract as a whole supports a per-container billing structure, as argued by the government. The language in Section B that CLIN 0002 is to be "price[d] as a fixed unit price per each," combined with the fact that the title of CLIN 0002 is "PPP&M," leads us to conclude that billing under CLIN 0002 was to be on a per-package basis. Moreover, the question and answer noted above remained in the final contract, and thus LAI was on notice as to the government's interpretation of the contract. As to LAI's contention that other "per each" billing CLINs are calculated "per unit," we note that those CLIN numbers are also defined per unit. The title of CLIN 0004 is "Small Boat and Landing Craft," while the title of CLIN 0005 is "Engines." Thus, defining "each" by these units supports the government's contention that "each" refers to the title of a given CLIN (and thus would refer to PPP&M actions for purposes of CLIN 0002).

Although we believe the plain language of the contract supports the government's reading, LAI's interpretation does not prevail even if we assume arguendo that the contract contains latent ambiguity as to the meaning of "each," as urged by LAI. In the case of latent ambiguity, the normal rule of contra proferentem applies if the contractor's interpretation is reasonable. See, e.g., Metric Constructors, 169 F.3d at

751. However, "[i]n order for a contractor to recover based on an ambiguous contract provision, the contractor must have relied on its interpretation of that provision when preparing its bid." P.R. Burke Co. v. United States, 277 F.3d 1346, 1355–56 n.3 (Fed. Cir. 2002); see also Edward R. Marden Corp. v. United States, 803 F.2d 701, 705 (Fed. Cir. 1986) ("It is . . . well settled that where a contractor seeks recovery based on his interpretation of an ambiguous contract, he must show that he relied on this interpretation in submitting his bid."). LAI could prove no such reliance in this case. The government points to numerous documents where LAI estimated the number of containers needed for transshipments in a one-to-one item-to-container ratio. Indeed, LAI sent several letters to the government, estimating material costs for transshipments based on 57,258 containers—the exact estimated number of transshipments. As found by the Board, LAI "proposed to use 49,758 containers and 7,500 'water vapor and new overpack' [57,528 total] for 57,258 items." ASBCA Decision, 08-1 BCA ¶ 33,761, at ¶ 20. LAI consistently believed the number of containers would equal the number of transshipment items, and therefore could not have relied on an interpretation where it would make hundreds of thousands of dollars per container (as opposed to $26.03).

## CONCLUSION

We conclude that the Board erred in holding that CLIN 0002 did not cover minimum military packing of off-base transshipments. We also conclude that, under CLIN 0002, LAI should be compensated on a per-package basis. Accordingly, we reverse the decision of the Board and remand the case to the Board for a determination of the amount of compensation to which LAI is entitled when (1) CLIN 0002 is used for

billing and payment for minimum military packing of off-base transshipments and (2) billing and payment under CLIN 0002 is on a per-package rather than a per-item basis.

<u>REVERSED</u> and <u>REMANDED</u>

COSTS

Each party shall bear its own costs.