ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
BAE Systems Southeast Shipyards Mayport LLC ) ASBCA No. 59876
)
Under Contract No. N00024-10-C-4406 )

APPEARANCES FOR THE APPELLANT: Robert E. Korroch, Esq.
William A. Wozniak, Esq.
Williams Mullen
Norfolk, VA

APPEARANCES FOR THE GOVERNMENT: Ronald J. Borro, Esq.
Navy Chief Trial Attorney
Anthony K. Hicks, Esq.
Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE WOODROW ON APPELLANT'S
MOTIONS FOR SUMMARY JUDGMENT AND FOR STAY

INTRODUCTION

This appeal involves a dispute over the calculation of an award and incentive fee under a cost-plus award fee contract for maintenance and repair of CG 47 and DDG 51 class ships at the Naval Station Mayport, in Jacksonville, Florida.

On 10 April 2016, appellant, BAE Systems Southeast Shipyards Mayport LLC (BAE or appellant), filed a motion for summary judgment, contending that it is entitled to the full award and incentive fee determined during the sixth evaluation period under Contract No. N00024-10-C-4406. Appellant asserts that it is entitled to an award and incentive fee payment of $1,895,525.70 based on its composite rating of 84.6 percent for the sixth evaluation period. Appellant contends that the government improperly reduced that amount in Phase II of the evaluation period when the government concluded that appellant did not achieve the 40 percent rate for small business subcontractor utilization that the contract required for payment of the fee without deduction. On 22 July 2016, appellant filed a motion to stay pending its motion for summary judgment.

The government opposes appellant's motion for summary judgment, arguing that there are genuine issues of material fact regarding the method of calculating the small business utilization percentage and regarding the specific costs appellant included in its calculation of the percentage. The government did not file a cross-motion for summary

judgment, but instead set forth its own competing statement of undisputed facts within its opposition brief. The government further opposes appellant's motion for stay.

We deny appellant's summary judgment motion as to the interpretation of the contract provision setting forth the small business utilization percentage and because genuine issues of material fact remain regarding the correct figures to be included in the calculation. We deny appellant's motion for a stay as moot.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

1. The Department of the Navy, Southeast Regional Maintenance Center, Jacksonville, Florida (government), awarded Contract No. N00024-10-C-4406 to BAE on 13 September 2010 (R4, tab 10). The contract is a cost-plus-award-fee contract for maintenance and repair of CG 47 and DDG 51 class ships (*id.* at 51).

2. The contract provides for the payment of an award fee and an incentive fee. The purpose of the award fee is to encourage and reward superior performance in the management and technical areas of the contract. The purpose of the incentive fee is to encourage and reward cost control and completion of work on or before negotiated milestone completion dates. (R4, tab 10 at 34, 41) The contract provides that the award and incentive fees are evaluated in two distinct phases for each fee evaluation period (*id.* at 34).

3. In Phase I, award and incentive fees are determined (R4, tab 10 at 34), while in Phase II, the total award and incentive fee calculated in Phase I is adjusted based on the contractor's performance in subcontracting to small businesses (*id.* at 44-46). The contract states that the contractor must subcontract at least 40 percent of the direct costs of the contract to small business concerns during each fee evaluation period (*id.* at 51, 128-29).

4. The contract sets forth a formula by which the small business subcontracting percentage is calculated which is as follows:

> For the purposes of this contract, the small business subcontracting requirement is that the Prime Contractor subcontract to small businesses, either directly or indirectly, over the course of all scheduled availabilities and inter-availability work completed within an overall Fee Evaluation Period to the extent that subcontracting averages forty percent (40%) of direct costs related to production work for CLINs associated with scheduled availabilities and inter-availability work (i.e. Continuous Maintenance and Emergent Maintenance) completed within the evaluation

2

period, minus the cost of any directed subcontracts and execution planning efforts, not including indirect cost.

(R4, tab 10 at 45) The contract provides that the 40 percent small business subcontracting requirement may be met at any subcontracting tier (*id.* at 128). If the contractor meets the 40 percent small business subcontracting requirement, the contractor receives 100 percent of the award and incentive fee determined in Phase I. If the contractor does not meet the 40 percent requirement, the contractor receives an adjusted percentage of the award and incentive fee determined in Phase I. (*Id.* at 46) The contract provides a table listing the percentage of Phase I award and incentive fee to be decremented based on the contractor's small business subcontracting percentage (*id.*).

5. When the solicitation was issued, Earl Industries, and the offeror, asked the government whether services performed by Atlantic Marine Florida, LLC (AMF)[1] could be excluded from the small business subcontracting requirement, on the grounds that AMF owned the only certified dry-docking facility at the Jacksonville shipyard (R4, tab 2, attach. 1 at 2; gov't opp'n, ex. 2). The government responded in Amendment No. 0001 to the solicitation, which states "the reason for the amendment is to: (1) change the date for proposal submission, (2) add and update clauses, and (3) answer offeror questions." Question and answer 4 in Amendment No. 0001 states, in relevant part:

> Question 4...Given that Atlantic Marine Florida (AMF), a large business, possesses the only certified dry-docking facility in the port capable of dry-docking these vessels, does the government consider the dry-docking services to be provided by AMF to be a directed subcontractor and, therefore, excluded from the small business subcontracting requirement?
>
> Answer 4: Atlantic Marine Florida is not considered a directed subcontractor. However, offerors will be allowed to exclude the use of the AMF dry-docking facility from the 40% small business subcontracting requirement.

(R4, tab 2, attach. 1 at 2)

6. Award Fee Evaluation Period (AFEP) No. 6 considered appellant's performance during the period from 1 February 2013 through 31 July 2013 for all availabilities and from 1 April 2013 through 30 September 2013, for Inter-Availability Planning and Administration (R4, tab 20). On 29 October 2013, appellant submitted data

---

[1] Later named BAE Systems Shipyard Jacksonville (BAE SSYJ).

3

for AFEP 6 reflecting a small business utilization rate of 40.32 percent (app. mot., ex. 2; app. supp. R4, tab 11 at 1). On 30 October 2013, the government advised appellant of errors in appellant's calculation (R4, tab 16 at 6; app. supp. R4, tab 11 at 2). Appellant admitted that its submission contained errors relating to the double-counting of certain costs (app. mot. ¶ 31).

7. On 30 October 2013, appellant submitted a revised calculation. Appellant made two significant changes in its revised calculations, both relating to the costs associated with work on the USS *San Jacinto* (job number 7333045). First, it corrected double-counting errors in its original submission by reducing the small business cost from $2,317,580 to $1,184,726 (app. mot., exs. 2, 3). The $1,132,854 reduction was for costs associated with work that appellant subcontracted to AMF (gov't mot., ex. 9). Second, appellant reduced the direct contract cost from $3,906,131 to $503,151. The difference of $3,402,980 also was for work appellant subcontracted to AMF. (App. supp. R4, tab 11 at 2).

8. In calculating the small business utilization for the USS *San Jacinto* job, appellant excluded the $1,132,854 from the contract cost (the denominator in the formula) but left that amount in the small business cost (the numerator in the formula) (gov't mot., ex. 9). This adjustment resulted in a small business utilization percentage of 235.46 percent for the USS *San Jacinto* job (*id.*). After these adjustments, appellant calculated its composite small business utilization percentage for all of the jobs included in AFEP 6 to be 44.68 percent (app. mot., ex. 3; R4, tab 17 at 1). In contrast, the government calculated appellant's composite small business utilization percentage to be 25.96 percent (R4, tab 25, encl. 2).

9. On 14 August 2014, the government issued Modification No. A00162. The modification resulted in a reduction of appellant's total award and incentive fee in the amount of $1,061,494. (R4, tab 26) On 18 November 2014, appellant submitted a certified claim for $1,061,494 (R4, tab 29). On 18 December 2014, the contracting officer issued a final decision (COFD) denying the claim (R4, tab 30). This timely appeal followed on 10 March 2015.

DECISION

Summary judgment shall be granted if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Avant Assessment, LLC*, ASBCA No. 58867, 15-1 BCA ¶ 36,067 at 176,129 (citing FED. R. CIV. P. 56(a)). To counter a motion for summary judgment, more than mere assertions are necessary. Conclusory assertions do not raise a genuine issue of fact. The non-movant must submit, by affidavit or otherwise, specific evidence that could be offered at

4

trial. Failing to do so may result in the motion being granted. *Thorington Electrical and Construction Co.*, ASBCA No. 56895, 10-2 BCA ¶ 34,558 at 170,418.

Contract interpretation begins with the plain language of the contract's provisions. *LAI Services, Inc. v. Gates*, 573 F.3d 1306, 1314 (Fed. Cir. 2009). Contract language is clear and unambiguous when there is only one reasonable interpretation consistent with the plain meaning. *Id.*

We repeat the formula by which the small business subcontracting percentage is calculated:

> For the purposes of this contract, the small business subcontracting requirement is that the Prime Contractor subcontract to small businesses, either directly or indirectly, over the course of all scheduled availabilities and inter-availability work completed within an overall Fee Evaluation Period to the extent that subcontracting averages forty percent (40%) of direct costs related to production work for CLINs associated with scheduled availabilities and inter-availability work (i.e. Continuous Maintenance and Emergent Maintenance) completed within the evaluation period, minus the cost of any directed subcontracts and execution planning efforts, not including indirect costs.

The contract further states the "forty percent (40%) subcontracting requirement may be met at any subcontracting tier." (SOF ¶ 4)

While this provision is densely worded, it does contain the necessary elements to determine the numerator and denominator of the small business utilization percentage. The formula may be paraphrased as follows:

> Numerator = total dollars subcontracted to small businesses (including direct and indirect costs at all subcontracting tiers)
>
> Denominator = direct costs of all production work (including total dollars subcontracted to small business) minus the cost of any directed subcontracts and execution planning efforts

Because the numerator is a part of the denominator, the denominator necessarily includes all of the costs for the relevant contract line item numbers (CLINs), including the total dollars subcontracted to small businesses. In other words, the small business subcontracting costs are necessarily a subset of the total costs (i.e., the numerator is a subset of the denominator).

5

We turn now to the question of whether appellant may exclude from the calculation the costs associated with the use of the AMF dry-docking facility. This question turns on whether the government's answer to Question 4 in Amendment No. 0001 to the solicitation is incorporated into the contract as a matter of law. We conclude that it is.

Solicitation Amendment No. 0001 states: "the reason for the amendment is to: (1) change the date for the proposal submission, (2) add and update clauses, and (3) answer offerors questions." The government's answer to Question 4 stated that: "offerors will be allowed to exclude the use of the AMF dry-docking facility from the 40% small business subcontracting requirement." (SOF ¶ 5)

Appellant contends that Question 4 was made part of the solicitation by Amendment No. 0001, and that the solicitation was, in turn, incorporated into the contract by operation of law (app. mot. at 10-11). Appellant relies on FAR 15.204-1, which sets forth a list of the component parts that must be included in the contract when following the uniform contract format. Appellant also contends that it relied on Amendment No. 0001 when preparing its Small Business Subcontracting Plan and that the plan is incorporated into the contract by operation of FAR 52.219-9, Alt. II (app. mot. at 11).

In response, the government contends that the solicitation is not part of the contract. According to the government, FAR 15.204-1 describes the component parts of the uniform contract format, but does not expressly provide for the incorporation of those parts into the final contract (gov't opp'n. at 17-18). The government also argues that, although appellant's Small Business Subcontracting Plan is incorporated into the contract, the Plan does not contain any specific reference to the exclusion of the use of the AMF dry-docking facility from the small business subcontracting requirement (gov't opp'n. at 19).

FAR 15.204-1, Uniform Contract Format, sets forth a "uniform contract format" that facilitates preparation of solicitations and contracts. Pursuant to FAR 15.204-1, contracting officers "shall prepare solicitations and resulting contracts using the uniform contract format." FAR 15.204-1(a). Accordingly, the following items all become part of a contract: (1) the schedule (including the solicitation and contract forms, supplies or services and price/costs statement of work, specifications, special requirements); (2) the contract clauses; and (3) the list of documents, exhibits and other attachments. FAR 15.204-1(b).

The contract in this appeal follows the uniform contract format and specifically includes the solicitation in Section A of Part I of the Schedule (R4, tab 10 at 1). Although FAR 15.204-1 does not state expressly that amendments to the solicitation are incorporated into the contract by reference, it is reasonable to conclude that amendments to the solicitation are included along with the solicitation. Moreover, the contract states

6

that the contractor shall perform the contract in accordance with its proposal submitted in response to Solicitation No. N00024-09-R-4412, providing further evidence that the solicitation is incorporated into the contract (R4, tab 10 at 87).

This appeal is not like *Enterprise Information Services, Inc. v. Dep't of Homeland Security*, CBCA No. 4671, 15-1 BCA ¶ 36,010, in which the Civilian Board of Contract Appeals (CBCA) concluded that an information technology support contract expressly incorporated only select portions of the solicitation and did not include questions and answers set forth in the solicitation. *Id.* at 175,884. Here, in contrast, the contract expressly includes the entire solicitation in Part A of the contract (R4, tab 10 at 1). Moreover, CBCA's conclusion was dicta, because it held that the result would be the same even considering the solicitation and its amendments to be within the contract. *Id.*

We conclude that it was reasonable for appellant to consider the solicitation – as amended – would be part of the contract and that the government would follow its answer concerning the calculation of the 40 percent small business subcontracting requirement.

The government also challenges whether two statements from appellant's proposed Small Business Subcontracting Plan (R4, tab 19-2 at 1, 2) that referenced Amendment No. 0001 are incorporated into the contract (gov't opp'n at 18). Appellant contends that these statements demonstrate its reliance on Amendment No. 0001 (app. mot. at 11). We do not reach this issue, however, because we have determined that Amendment No. 0001 to the solicitation is a part of the contract as a matter of law.

The government further argues that there is a genuine issue of material fact regarding the interpretation of an email from the contracting officer, Jose Marin, concerning whether the government consented to appellant's interpretation of the contract when it approved appellant's calculation of the small business utilization factor for AFEP 5 (gov't opp'n at 24-25). This dispute concerns the interpretation of Mr. Marin's email, not the fact that the email was sent, the facts surrounding the email, or the content of the email. Moreover, the interpretation of Mr. Marin's email concerns a prior evaluation period to the period at issue in this case. While extrinsic evidence of the parties' contemporaneous contract interpretation may be relevant in some circumstances, it is not necessary to consider in this case, because the plain language of the contract is unambiguous. *Coast Federal Bank, FSB v. United States*, 323 F.3d 1035, 1040 (Fed. Cir. 2003); *Certified Construction Company of Kentucky, LLC*, ASBCA No. 58782, 15-1 BCA ¶ 36,068 at 176,133.

In this case, the formula for calculating the small business utilization percentage must be considered together with the statements in solicitation Amendment No. 0001. Indeed, it is a core principle of contract interpretation that contract terms are interpreted and read as a whole, giving reasonable meaning to all of the contract's parts, and without leaving "a portion of the contract useless, inexplicable, void, or superfluous." *NVT*

7

*Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004); *Columbia State Bank* (*formerly Appeal of Castle-Rose, Inc.*), ASBCA No. 59531, 16-1 BCA ¶ 36,399 at 177,454. Therefore, we conclude that the costs paid to AMF for the use of the dry-dock facility may be excluded from the small business calculation.

Finally, we agree with the government that the language of Amendment No. 0001 is permissive (gov't opp'n at 20-21). The words "allowed to exclude" logically imply that the contractor may choose whether to include or exclude the costs associated with the use of the dry-dock facility from the small business utilization calculation.

## THE SMALL BUSINESS UTILIZATION CALCULATION FOR AFEP 6

In its brief and in its answer to the complaint, the government makes two challenges to appellant's calculation of the small business utilization percentage. First, the government contends that appellant should have subtracted the AMF costs from both the numerator and denominator of the fraction (gov't opp'n at 21). Similarly, in its answer, the government argues that, if appellant is permitted to subtract the AMF costs from the contract cost in the denominator, it also must exclude from the numerator the corresponding costs of second-tier small business subcontractors who performed work for AMF (answer ¶ 41). The government also makes this argument in the COFD, where it states that the subcontracting dollars in the numerator must have a "direct correlation and be attributed to the 'direct costs related to production work'" as contained within the denominator (R4, tab 30 at 5).

We agree. There is support for this notion in the government's answer to Question 4, which states that "offerors will be allowed to exclude the use of the AMF dry-docking facility from the 40% small business subcontracting requirement." Excluding the AMF costs from the "requirement" implies that the costs should be excluded from the entire calculation, not just from the denominator of the fraction. While it is true that the contract provides that the "forty percent (40%) subcontracting requirement may be met at any subcontracting tier" (R4, tab 10 at 128), it also is true that for a percentage to be accurate, both the numerator and denominator must include the same categories of costs. In a percentage, the numerator is a subset or portion *of* the denominator, meaning that it (numerator) represents a part of a whole. The numerator represents how many parts of the whole are being considered, while the denominator represents the total number of parts within the whole. It also means that the numerator cannot be greater than the denominator. *See* "Percentage," Merriam-Webster.com, n.d. Web 20 December 2016 (defining "percentage" as a part of a whole expressed in hundredths).

In this situation, if appellant elects to exclude the costs associated with the use of the AMF dry-dock facility, it must exclude them from the whole, including costs associated with second-tier small business subcontractors who performed work for AMF.

8

In other words, the costs for the use of the AMF dry-dock facility must be excluded from both the numerator and the denominator of the small business utilization fraction.[2] Appellant's calculations for job no. 7333045 (for work on the USS *San Jacinto*) result in a small business utilization percentage of 235 percent (SOF ¶ 8), a result which defies logic. A basic tenet of contract interpretation is that "[w]e must interpret the contract in a manner that gives meaning to all of its provisions and makes sense." *Shell Oil Co. v. United States*, 751 F.3d 1282, 1293 (Fed. Cir. 2014); *ITT Defense Communications Division*, ASBCA No. 44791, 98-1 BCA ¶ 29,590 at 146,703 (contract should be construed to avoid absurd results).

Second, the government contends that appellant subtracted the wrong amount of the AMF costs. According to the government, appellant should have subtracted only the amount pertaining to the "use of [the AMF] dry-dock facility," not the entire amount of the AMF subcontract (gov't opp'n at 21). However, the government does not supply a different amount or question any of the particular invoices relied on by the appellant as support for its figure (app. supp. R4, tab 6 (AFEP 6 Spreadsheet)). Moreover, in the COFD, the government states that it is *not* requiring appellant to separate out the costs associated with the "use of the dry-dock facility," at least with respect to evaluation period six (R4, tab 30 at 1). The government makes no attempt to explain this apparent contradiction between the government's brief and the COFD.

While the Rule 4 file contains a spreadsheet with cost data for evaluation period six (R4, tab 37 (AFEP 6 Spreadsheet)), we are unable to ascertain the precise amount paid to AMF for the use of the AMF dry-dock facility that is pertinent to the small business calculation. Although it appears that appellant excluded $1,132,853 in costs paid to AMF from the denominator while failing to exclude the same amount from the numerator of the small business utilization fraction, we are unable to determine whether this amount is correct. In addition, on the record before us, we are unable to ascertain the effect of including the dry-dock costs paid to AMF in the equation, if appellant were to elect to do so. Therefore, because we cannot determine from the record before us the specific costs to include in the calculation of small business utilization percentage, and because appellant possesses the discretion whether to include the AMF dry-dock costs in its calculation, summary judgment is precluded.

---

[2] In the alternative, if appellant believes that including the costs paid to AMF for the use of the dry-dock facility would result in a more favorable small business percentage, it may do so by including all of the AMF direct costs in the denominator and the costs of the second-tier small business subcontractors who performed work for AMF in the numerator.

9

## CONCLUSION

We hold that the contract provision setting forth the calculation of the small business utilization percentage is unambiguous and that, if the contractor elects to exclude the costs associated with the use of the AMF dry-docking facility, those costs must be excluded from both the numerator and denominator of the small business utilization percentage. Accordingly, we grant summary judgment, in part, as to the interpretation of the contract and direct the parties to present evidence, either orally or in writing, as to the appropriate figures to input into the small business percentage formula. Finally, we deny appellant's motion for stay as moot.

Dated: 13 July 2017

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59876, Appeal of BAE Systems Southeast Shipyards Mayport LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

10