# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Certified Construction Company of | ) ASBCA No. 58782 |
| Kentucky, LLC | ) |
| | ) |
| Under Contract No. W9124D-06-D-0001 | ) |

APPEARANCES FOR THE APPELLANT: Thomas E. Roma, Jr., Esq.
G. Alan Oliver, Esq.
 Ackerson & Yann, PLLC
 Louisville, KY

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
 Army Chief Trial Attorney
 CPT Harry M. Parent, III, JA
 CPT Tyler L. Davidson, JA
 Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE PAGE ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

This appeal arises under Contract No. W9124D-06-D-0001 (contract) between the Department of the Army (Army or government) and Certified Construction Company of Kentucky, LLC (Certified or contractor). Certified appeals from a contracting officer's (CO's) final decision (COFD) denying Certified's monetary claim resulting from an increase in the costs of liquid asphalt during performance. In a previous decision, we dismissed for lack of jurisdiction the portion of Certified's claim accruing prior to 22 March 2007 as time-barred under the Contract Disputes Act's (CDA's), 41 U.S.C. §§ 7101-7109, six-year statute of limitations. *Certified Construction Co. of Kentucky, LLC*, ASBCA No. 58782, 14-1 BCA ¶ 35,662. The parties have filed cross-motions for summary judgment on the portion of Certified's claim over which we exercised jurisdiction.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

The parties have submitted a Joint Stipulation of Material Facts (Jt. Stip.). The following facts are not in dispute.

1. On 24 October 2005, the Army awarded the requirements contract to Certified via sealed bidding procedures (Jt. Stip. ¶ 1; R4, tab 17 at 3[1]). Through task orders issued under the contract, Certified provided road construction and repair including concrete placement, asphalt surface treatments, and pavement markings at Fort Knox, Kentucky (Jt. Stip. ¶ 4; R4, tab 20[2] at 1-2, 4). The period of performance was from 1 November 2005 to 31 October 2006, with a single one-year option period (R4, tab 20 at 1, 4).

2. The contract included the following relevant Federal Acquisition Regulation (FAR) clauses: 52.233-1, DISPUTES (JUL 2002) – ALTERNATE I (DEC 1991); FAR 52.216-21, REQUIREMENTS (OCT 1995) – ALTERNATE I (APR 1984); FAR 52.217-8, OPTION TO EXTEND SERVICES (NOV 1999); FAR 52.217-9, OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000) (R4, tab 20 at 49, 51-52). The contract also included Defense Federal Acquisition Regulation Supplement (DFARS) clause 252.243-7002, REQUESTS FOR EQUITABLE ADJUSTMENT (MAR 1998) (*id.* at 50).

3. The contract required work to be performed in accordance with technical specifications contained in the document identified as "P.E. 3-05," dated 6 July 2005 (R4, tab 20 at 79). The provisions within "P.E. 3-05" entitled "**PART I TECHNICAL PROVISIONS DIVISION 2 – SECTION 2B GENERAL CONSTRUCTION**" (General Construction specifications) provided, in relevant part:

> 1. APPLICABLE PUBLICATIONS: The following publication is hereby incorporated by reference into the specifications for this project:
>
>> Standard Specification for Road and Bridge Construction,
>> Kentucky Department of Highways, latest edition
>> www.kytc.state.us/construction/spec2000[3]

---

[1] Citations of this document in the Rule 4 file are to the Bates-numbered pages unless indicated otherwise.

[2] The Rule 4 file includes two different copies of the awarded contract under tabs 1 and 20. The contract under tab 1 contains 361 pages and is only signed by the CO; the copy under tab 20 contains 147 pages and is signed by both parties. Since block 28 of Standard Form 1442 is checked and requires the signature of the contractor, citations are to the copy under tab 20. The two versions of the contract do not differ with respect to relevant provisions.

[3] Appellant submitted a bound copy of the Kentucky Transportation Cabinet/Department of Highways, Standard Specifications for Road and Bridge Construction (2004 ed.) (KDOH Specifications), and the parties agree that this edition is applicable (Jt. Stip. ¶ 3). We mark this copy for the record as Rule 4, tab 22.

2

2. GENERAL: All work and materials shall conform to the applicable requirements of Section 200 through Section 800 of the Kentucky Department of Highways (KDOH) Specifications except as noted in these specifications or contract documents. In case of difference between KDOH Specifications and the CONTRACT CLAUSES the CONTRACT CLAUSES shall govern.

3. ABBREVIATIONS AND DEFINITIONS: Standard abbreviations shall be in accordance with Section 101.01 of the KDOH Specifications. Where such terms as "Chairman", "Commission", "Engineer", or "Department" are used, they shall mean "Contracting Officer". Whenever the works [sic] "Extra Work" or similar phrase is used, it shall mean "Changes" as defined in the CONTRACT CLAUSES.

4. CONTROL OF MATERIALS: Control of materials shall be in accordance with Section 106 of KDOH Specifications in addition to the requirements of the CONTRACT CLAUSE.

5. EXCEPTIONS TO KDOH SPECIFICATIONS:

5.1 Measurement and Payment paragraphs shall not apply. All work shall be included in the unit price items listed in the bid schedule that is part of these contract documents.

(R4, tab 20 at 97; Jt. Stip. ¶ 2) (Emphasis added)

4. The KDOH Specifications, Divisions 100-800 contain a number of references to "Measurement" and "Payment" provisions. *See, e.g.,* Division 100, General Provisions, § 109 Measurement and Payment (R4, tab 22 at 109-1-109-12); Division 200, Earthwork, § 201 Staking, ¶ 201.4 Measurement and ¶ 201.05 Payment (*id.* at 201-2); § 202 Clearing and Grubbing, ¶ 202.04 Measurement and ¶ 202.05 Payment (*id.* at 202-1-202-2); and § 303 Pavement Drainage Blanket, ¶ 303.04 Measurement and ¶ 303.05 Payment (*id.* at 303-4-303-5).

5. The contract included numerous contract line item numbers (CLINs) providing estimated quantities and unit pricing for various work to be performed. In accordance with the General Construction specifications, CLINs 0072 and 1072 provided for the installation of a "Bituminous concrete surface course," and CLINs 0073 and 1073 provided for the installation of a "Bi[t]uminous concrete binder course" (R4, tab 20 at 15-16, 37).

3

6. On 30 October 2006, the CO executed Modification No. P00005, exercising the option period and extending the term of the contract to 31 October 2007 (R4, tab 7).

7. On 3 October 2007, the CO executed unilateral Modification No. P00009, extending the period of performance of the contract to 30 April 2008 (R4, tab 11).

8. By letter dated 17 September 2012, Certified submitted a request for equitable adjustment (REA), seeking an equitable adjustment to the contract in the amount of $839,052.31 for additional incurred costs resulting from the increase in prices of petroleum products, specifically liquid asphalt, used for the production of asphalt hot mixes under CLINs 0072, 0073, 1072, and 1073 (R4, tab 15; Jt. Stip. ¶¶ 3, 6). In calculating its request, Certified relied on Section 109.07 of the KDOH Specifications entitled "PRICE ADJUSTMENTS" which provides in relevant part:

> **109.07 PRICE ADJUSTMENTS.** Due to the fluctuating costs of petroleum products, the Department will adjust the compensation of specified liquid asphalt items....
>
> ....
>
> **109.07.01 Liquid Asphalt.** The Department will list a base price for liquid asphalt products in the Bid Proposal for applicable projects. The Department will compare the Kentucky Average Price Index, for the month that the Contract is let, to the index for the month that the Contractor places the material on the project to determine the percent change. When the original contract quantity for asphalt items is equal to or greater than 3,000 tons and when the average price of the liquid asphalt products increases or decreases more than 10 percent, the Department will adjust the Contractor's compensation.

(*Id.*; R4, tab 22)

9. By letter dated 19 October 2012, the CO denied Certified's REA, asserting that subparagraph 5.1 of the General Construction specifications in the contract specifically excluded Section 109 of the KDOH Specifications (R4, tab 16; SOF ¶ 3; Jt. Stip. ¶ 7).

10. By letter dated 22 March 2013, Certified converted its REA into a certified claim for $839,052.31, demanding, as a matter of right, the amount requested in its REA (SOF ¶ 7). Certified asserted that it was entitled to the difference in "increased cost of performance resulting from the unprecedented increase in the price of Liquid

4

Asphalt" from the time it submitted its bid pricing to performance of the contract. Certified disagreed with the CO's interpretation, maintaining that Section 109 of the KDOH Specifications was not explicitly excluded, and that the intent of subparagraph 5.1 of the General Construction specifications was to exclude the measurement and payment paragraphs within Sections 200 thru 800 of the KDOH Specifications as provided under paragraph two of the General Construction specifications. (R4, tab 17 at 1-2; SOF ¶ 3; Jt. Stip. ¶ 8)

11. On 31 May 2013, the CO issued a final decision denying Certified's claim in its entirety. The COFD asserted that the relevant technical provisions did not incorporate the KDOH Specifications in their entirety, and specific sections of the KDOH Specifications applicable to the contract were explicitly incorporated. Lastly, the CO asserted that measurement and payment paragraphs of the KDOH Specifications, including Section 109, did not apply. (R4, tab 18; Jt. Stip. ¶ 9)

12. On 16 July 2013, Certified appealed the 31 May 2013 CO's final decision to the Board (Jt. Stip. ¶ 10).

13. On 8 July 2014, the Board granted the government's partial motion to dismiss with respect to the portion of Certified's claim that accrued prior to 22 March 2007, more than six years before Certified's 22 March 2013 claim date. That portion of the appeal was dismissed for lack of jurisdiction under the CDA.

14. The parties stipulate that Certified's claim accruing after 22 March 2007 is for a sum certain amount of $606,707.55 (Jt. Stip. ¶ 12).

DECISION

On 8 July 2014, we issued our opinion, *Certified Construction Co. of Kentucky, LLC*, 14-1 BCA ¶ 35,662, partially dismissing the portion of Certified's claim accruing prior to 22 March 2007 for lack of jurisdiction because that portion was time-barred under the CDA's six-year statute of limitations (SOF ¶ 12). Subsequent to the issuance of our decision, the United States Court of Appeals for the Federal Circuit in *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315 (Fed. Cir. 2014), reversed its line of cases holding that the CDA's statute of limitations was jurisdictional. By correspondence dated 26 March 2015, we directed the parties to provide supplemental briefing on the effect of the *Sikorsky* decision on the parties' cross-motions for summary judgment. The government responded that *Sikorsky* did not impact the parties' cross-motions and "the rationale of the Partial Motion to Dismiss is still valid" (gov't supp. br. at 2). While asserting that the Board's 8 July 2014 partial dismissal was erroneous in light of the *Sikorsky* decision, Certified agreed that the cross-motions are ready for adjudication as *Sikorsky's* effect would bear on the issue of quantum rather than entitlement (app. supp. br.). After consideration of the parties' views and re-examining our 8 July 2014 decision, based on *Sikorsky* and the findings in our

decision, we conclude that on the merits, the portion of Certified's claim dismissed in that decision for lack of jurisdiction is properly time-barred by the CDA. We next proceed toward resolution of the parties' cross-motions for summary judgment.

### 1. Summary Judgment

Matters of contract interpretation are questions of law and are amenable for resolution through summary judgment. *Varilease Technology Group, Inc. v. United States*, 289 F.3d 795, 798 (Fed. Cir. 2002). The guidelines for summary judgment are well established; the granting of summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to favorable judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *DIRECTV Group, Inc. v. United States*, 670 F.3d 1370, 1374 (Fed. Cir. 2012); *Osborne Construction Co.*, ASBCA No. 55030, 09-1 BCA ¶ 34,083 at 168,512. The parties' cross-motions are evaluated on their own merits, and we are not obligated to "grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). While the parties have jointly stipulated that there are no genuine issues of material fact to their respective positions on the issue of contract interpretation, we are "not bound by the concessions or stipulations by either party that are contrary to the evidence or the law." *General Atronics Corp.*, ASBCA No. 37923, 91-3 BCA ¶ 24,047 at 120,360 (citing *Kaminer Construction Corp. v. United States*, 488 F.2d 980 (Ct. Cl. 1973)).

The movant has the burden to establish that there are no material facts in dispute. A material fact is one which may affect the outcome of the case. *Liberty Lobby,* 477 U.S. at 248. At the summary judgment stage, we do not resolve controversies, weigh evidence, or make determinations of credibility. *Id.* at 255. All reasonable inferences are drawn in favor of the nonmovant. *Id.*

### 2. The Parties' Contentions

The parties filed, with their cross-motions for summary judgment, a Joint Stipulation of Material Facts, and thus, aver that there are no genuine issues of material fact. The disputed matter is over the proper interpretation of subparagraph 5.1 of the General Construction specifications. Each party asserts that it is entitled to judgment as a matter of law, with each arguing that its respective interpretation of the subparagraph is plainly supported and reasonable. Certified largely contends that the subparagraph did not expressly exclude Section 109 of the incorporated KDOH Specifications upon which it relied as the basis for its claim. In reaching this interpretation, Certified argues that the intention of the first sentence of the subparagraph, which states "Measurement and Payment paragraphs shall not apply," was a limitation applicable to Sections 200 thru 800 of the KDOH Specifications, sections referenced under paragraph two of the General Construction specifications.

(App. mot. at 4-7) According to Certified, this is the correct reading because the CLINs in the contract contain unit pricing for the type of work to be accomplished in accordance with those specific KDOH Specifications (app. mot. at 7-8).

The government disagrees with Certified's interpretation, arguing that Certified's interpretation is unreasonable because it would render meaningless the exclusion of measurement and payment provisions explicitly stated in the first sentence of subparagraph 5.1. Additionally, the government argues that Certified's interpretation would subject the firm-fixed unit pricing in the contract to adjustments under the payment provisions in the KDOH Specifications inconsistent with the second sentence that states "[a]ll work shall be included in the unit price items listed." (Gov't mot. at 4-6) Therefore, the government contends that the only reasonable interpretation of subparagraph 5.1 is the express exclusion of any payment provisions in the KDOH Specifications, including Section 109 (gov't mot. at 6-7).

The parties also present alternative arguments if the underlying language of the subparagraph is deemed ambiguous, and they disagree as to the type of ambiguity. The government argues that any ambiguity regarding excepted contract provisions pertaining to "Measurement and Payment" should be considered patent, and imposing upon Certified the duty to inquire and seek clarification prior to submitting its bid for the contract (gov't mot. at 8). Certified counters that such an ambiguity should be considered latent, arguing that the ambiguity did not become apparent until Certified became aware of the CO's position concerning whether Section 109 of the KDOH Specifications was excluded (app. resp. to gov't mot. at 7). Certified argues that it should recover under the doctrine of *contra proferentem* as the ambiguity should be construed against the government (*id.*).

### 3. *Contract Interpretation*

Contract interpretation begins with examination of the plain language of the written agreement. *LAI Services, Inc. v. Gates*, 573 F.3d 1306, 1314 (Fed. Cir. 2009). The terms are given their plain and ordinary meaning. If the contract language is clear and unambiguous, the plain language controls, extrinsic evidence is not allowed to contradict the plain language, and resolution through summary judgment is amenable. *Coast Federal Bank, FSB v. United States*, 323 F.3d 1035, 1040 (Fed. Cir. 2003); *Pacific Coast Community Services, Inc.*, ASBCA No. 56754, 10-1 BCA ¶ 34,421 at 169,912. The contract terms are interpreted and read as a whole, giving reasonable meaning to all of its parts, and without leaving "a portion of the contract useless, inexplicable, void, or superfluous." *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004).

Contract language is clear and unambiguous when there is only one reasonable interpretation consistent with the plain meaning. *LAI Services*, 573 F.3d at 1314. A contract term is not rendered ambiguous just by the parties' disagreement as to the

7

interpretation alone; a party's respective interpretation "must fall within a 'zone of reasonableness.'" *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1999). If the contract language supports more than one reasonable interpretation, and the weighing of extrinsic evidence is required to determine the parties' intent to resolve the ambiguity, summary judgment is not appropriate. *MIC/CCS, Joint Venture*, ASBCA No. 58023, 14-1 BCA ¶ 35,678 at 174,637-38.

Ambiguities fall under two categories – an ambiguity is either patent or latent. If there is an ambiguity, the general rule of *contra proferentem* is to construe the ambiguous contract language against the drafter. *Metric Constructors*, 169 F.3d at 751. However, a patent ambiguity is an exception to the general rule where the ambiguity is "sufficiently glaring to trigger" a contractor to inquire before a bid is submitted. *HPI/GSA-3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004). The patent ambiguity is construed against the contractor. *Id.* If an ambiguity does not meet the patent ambiguity exception and is latent, the general rule may be applied, but the contractor's interpretation must be determined to be reasonable. *Id.*

### 4. *Analysis*

We agree that there are no material facts in dispute for these cross-motions, and the issue involves a matter of pure contract interpretation. Initially, we must determine whether the parties' interpretations are reasonable based on the plain language of the contract, and then, if more than one reasonable interpretation is supported, whether the existing ambiguity is patent or latent. Upon closer examination of the language within subparagraph 5.1 of the General Construction specifications, and taking into account that we must interpret the terms as a whole and give reasonable meaning to all parts of the contract, we find that the government's interpretation is the only reasonable interpretation of the subparagraph. It is clear that the KDOH Specifications were expressly incorporated by reference into the contract under paragraph one of the General Construction specifications. Subparagraph 5.1 contains the following two sentences: "Measurement and Payment paragraphs shall not apply. All work shall be included in the unit price items listed in the bid schedule that is part of these contract documents." (SOF ¶ 3) Generally, Sections 200 thru 800 of the KDOH Specifications contain separate paragraphs entitled "measurement" and "payment" for the type of construction work to be completed (SOF ¶ 4). Certified's interpretation that the measurement and payment paragraphs under these sections are excluded, but Section 109 entitled "MEASUREMENT AND PAYMENT" is not, is an inconsistent and unsupported reading, and hence, not within the "zone of reasonableness." First, Section 109, in and of itself, contains "measurement" and "payment" paragraphs, which the language of the first sentence in subparagraph 5.1 explicitly excludes. Certified relied on those "payment" paragraphs to calculate its REA and claim (SOF ¶¶ 8, 10). Second, subparagraph 5.1 falls beneath the heading of paragraph five, entitled "EXCEPTIONS TO KDOH SPECIFICATIONS." The KDOH Specifications include all sections, not just Sections 200 thru 800. Nothing in the plain language of

subparagraph 5.1 limits its application to Sections 200 thru 800 of the KDOH Specifications, and therefore, we determine that Certified's contrary interpretation is unreasonable as it conflicts with the plain language.

Further, even if we found *arguendo* that an ambiguity existed, Certified's pursuit for recovery would not prevail because we would consider the ambiguity patent. The contract as awarded did not include a provision providing for an economic price adjustment. CLINs 0072, 0073, 1072, and 1073 contained fixed-unit pricing for the work to be completed as described (SOF ¶ 5). For Certified to now argue that it could not know that Section 109 of the KDOH Specifications was excluded under the contract until the CO communicated his position is unpersuasive. Assuming without deciding that the language created an ambiguity, Certified had a duty to seek clarification prior to submission of its bid. Certified knew that the contract would be awarded through sealed bidding procedures, unit prices under the respective CLINs were fixed price, the contract lacked an express economic price adjustment clause, and subparagraph 5.1 of the General Construction specifications contained express language restricting the application of "measurement" and "payment" provisions of the incorporated KDOH Specifications. Thus, if Certified believed that Section 109 was not excluded, it was unreasonable for Certified to not seek clarification first due to the inconsistency between its interpretation and the face of the contract terms. Since Certified failed to do so, the patent ambiguity would be construed against Certified.

## CONCLUSION

We conclude that the government's interpretation of subparagraph 5.1 of the General Construction specifications, excluding all "measurement" and "payment" paragraphs of the KDOH Specifications, including Section 109, is the only reasonable interpretation for the reasons stated above. Therefore, we grant the government's motion and deny Certified's motion. The appeal is denied.

Dated: 12 August 2015

REBA PAGE
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

9

I concur                                        I concur


MARK N. STEMPLER                                RICHARD SHACKLEFORD
Administrative Judge                            Administrative Judge
Acting Chairman                                 Vice Chairman
Armed Services Board                            Armed Services Board
of Contract Appeals                             of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA No. 58782, Appeal of Certified
Construction Company of Kentucky, LLC, rendered in conformance with the Board's
Charter.

Dated:


JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

10

ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| Certified Construction Company of | ) | ASBCA No. 58782 |
| Kentucky, LLC | ) | |
| | ) | |
| Under Contract No. W9124D-06-D-0001 | ) | |

APPEARANCES FOR THE APPELLANT:     Thomas E. Roma, Jr., Esq.
                                   G. Alan Oliver, Esq.
                                     Ackerson & Yann, PLLC
                                     Louisville, KY

APPEARANCES FOR THE GOVERNMENT:    Raymond M. Saunders, Esq.
                                     Army Chief Trial Attorney
                                   CPT Harry M. Parent, III, JA
                                   CPT Tyler L. Davidson, JA
                                     Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE PAGE ON THE PARTIES'
CROSS-MOTIONS FOR SUMMARY JUDGMENT

This appeal arises under Contract No. W9124D-06-D-0001 (contract) between
the Department of the Army (Army or government) and Certified Construction
Company of Kentucky, LLC (Certified or contractor). Certified appeals from a
contracting officer's (CO's) final decision (COFD) denying Certified's monetary
claim resulting from an increase in the costs of liquid asphalt during performance. In a
previous decision, we dismissed for lack of jurisdiction the portion of Certified's claim
accruing prior to 22 March 2007 as time-barred under the Contract Disputes Act's
(CDA's), 41 U.S.C. §§ 7101-7109, six-year statute of limitations. *Certified
Construction Co. of Kentucky, LLC*, ASBCA No. 58782, 14-1 BCA ¶ 35,662. The
parties have filed cross-motions for summary judgment on the portion of Certified's
claim over which we exercised jurisdiction.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

The parties have submitted a Joint Stipulation of Material Facts (Jt. Stip.). The
following facts are not in dispute.

1. On 24 October 2005, the Army awarded the requirements contract to Certified via sealed bidding procedures (Jt. Stip. ¶ 1; R4, tab 17 at 3[1]). Through task orders issued under the contract, Certified provided road construction and repair including concrete placement, asphalt surface treatments, and pavement markings at Fort Knox, Kentucky (Jt. Stip. ¶ 4; R4, tab 20[2] at 1-2, 4). The period of performance was from 1 November 2005 to 31 October 2006, with a single one-year option period (R4, tab 20 at 1, 4).

2. The contract included the following relevant Federal Acquisition Regulation (FAR) clauses: 52.233-1, DISPUTES (JUL 2002) – ALTERNATE I (DEC 1991); FAR 52.216-21, REQUIREMENTS (OCT 1995) – ALTERNATE I (APR 1984); FAR 52.217-8, OPTION TO EXTEND SERVICES (NOV 1999); FAR 52.217-9, OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000) (R4, tab 20 at 49, 51-52). The contract also included Defense Federal Acquisition Regulation Supplement (DFARS) clause 252.243-7002, REQUESTS FOR EQUITABLE ADJUSTMENT (MAR 1998) (*id.* at 50).

3. The contract required work to be performed in accordance with technical specifications contained in the document identified as "P.E. 3-05," dated 6 July 2005 (R4, tab 20 at 79). The provisions within "P.E. 3-05" entitled "**PART I TECHNICAL PROVISIONS DIVISION 2 – SECTION 2B GENERAL CONSTRUCTION**" (General Construction specifications) provided, in relevant part:

> 1. APPLICABLE PUBLICATIONS: The following publication is hereby incorporated by reference into the specifications for this project:
>
> Standard Specification for Road and Bridge Construction,
> Kentucky Department of Highways, latest edition
> www.kytc.state.us/construction/spec2000[3]

---

[1] Citations of this document in the Rule 4 file are to the Bates-numbered pages unless indicated otherwise.

[2] The Rule 4 file includes two different copies of the awarded contract under tabs 1 and 20. The contract under tab 1 contains 361 pages and is only signed by the CO; the copy under tab 20 contains 147 pages and is signed by both parties. Since block 28 of Standard Form 1442 is checked and requires the signature of the contractor, citations are to the copy under tab 20. The two versions of the contract do not differ with respect to relevant provisions.

[3] Appellant submitted a bound copy of the Kentucky Transportation Cabinet/Department of Highways, Standard Specifications for Road and Bridge Construction (2004 ed.) (KDOH Specifications), and the parties agree that this edition is applicable (Jt. Stip. ¶ 3). We mark this copy for the record as Rule 4, tab 22.

2

2. <u>GENERAL</u>: All work and materials shall conform to the applicable requirements of Section 200 through Section 800 of the Kentucky Department of Highways (KDOH) Specifications except as noted in these specifications or contract documents. In case of difference between KDOH Specifications and the CONTRACT CLAUSES the CONTRACT CLAUSES shall govern.

3. <u>ABBREVIATIONS AND DEFINITIONS</u>: Standard abbreviations shall be in accordance with Section 101.01 of the KDOH Specifications. Where such terms as "Chairman", "Commission", "Engineer", or "Department" are used, they shall mean "Contracting Officer". Whenever the works [sic] "Extra Work" or similar phrase is used, it shall mean "Changes" as defined in the CONTRACT CLAUSES.

4. <u>CONTROL OF MATERIALS</u>: Control of materials shall be in accordance with Section 106 of KDOH Specifications in addition to the requirements of the CONTRACT CLAUSE.

5. <u>EXCEPTIONS TO KDOH SPECIFICATIONS</u>:

     <u>5.1 Measurement and Payment paragraphs shall not apply</u>. All work shall be included in the unit price items listed in the bid schedule that is part of these contract documents.

(R4, tab 20 at 97; Jt. Stip. ¶ 2) (Emphasis added)

4. The KDOH Specifications, Divisions 100-800 contain a number of references to "Measurement" and "Payment" provisions. *See, e.g.*, Division 100, General Provisions, § 109 Measurement and Payment (R4, tab 22 at 109-1-109-12); Division 200, Earthwork, § 201 Staking, ¶ 201.4 Measurement and ¶ 201.05 Payment (*id.* at 201-2); § 202 Clearing and Grubbing, ¶ 202.04 Measurement and ¶ 202.05 Payment (*id.* at 202-1-202-2); and § 303 Pavement Drainage Blanket, ¶ 303.04 Measurement and ¶ 303.05 Payment (*id.* at 303-4-303-5).

5. The contract included numerous contract line item numbers (CLINs) providing estimated quantities and unit pricing for various work to be performed. In accordance with the General Construction specifications, CLINs 0072 and 1072 provided for the installation of a "Bituminous concrete surface course," and CLINs 0073 and 1073 provided for the installation of a "Bi[t]uminous concrete binder course" (R4, tab 20 at 15-16, 37).

3

6. On 30 October 2006, the CO executed Modification No. P00005, exercising the option period and extending the term of the contract to 31 October 2007 (R4, tab 7).

7. On 3 October 2007, the CO executed unilateral Modification No. P00009, extending the period of performance of the contract to 30 April 2008 (R4, tab 11).

8. By letter dated 17 September 2012, Certified submitted a request for equitable adjustment (REA), seeking an equitable adjustment to the contract in the amount of $839,052.31 for additional incurred costs resulting from the increase in prices of petroleum products, specifically liquid asphalt, used for the production of asphalt hot mixes under CLINs 0072, 0073, 1072, and 1073 (R4, tab 15; Jt. Stip. ¶¶ 3, 6). In calculating its request, Certified relied on Section 109.07 of the KDOH Specifications entitled "PRICE ADJUSTMENTS" which provides in relevant part:

> **109.07 PRICE ADJUSTMENTS.** Due to the fluctuating costs of petroleum products, the Department will adjust the compensation of specified liquid asphalt items....
>
> ....
>
> **109.07.01 Liquid Asphalt.** The Department will list a base price for liquid asphalt products in the Bid Proposal for applicable projects. The Department will compare the Kentucky Average Price Index, for the month that the Contract is let, to the index for the month that the Contractor places the material on the project to determine the percent change. When the original contract quantity for asphalt items is equal to or greater than 3,000 tons and when the average price of the liquid asphalt products increases or decreases more than 10 percent, the Department will adjust the Contractor's compensation.

(*Id.*; R4, tab 22)

9. By letter dated 19 October 2012, the CO denied Certified's REA, asserting that subparagraph 5.1 of the General Construction specifications in the contract specifically excluded Section 109 of the KDOH Specifications (R4, tab 16; SOF ¶ 3; Jt. Stip. ¶ 7).

10. By letter dated 22 March 2013, Certified converted its REA into a certified claim for $839,052.31, demanding, as a matter of right, the amount requested in its REA (SOF ¶ 7). Certified asserted that it was entitled to the difference in "increased cost of performance resulting from the unprecedented increase in the price of Liquid

4

Asphalt" from the time it submitted its bid pricing to performance of the contract. Certified disagreed with the CO's interpretation, maintaining that Section 109 of the KDOH Specifications was not explicitly excluded, and that the intent of subparagraph 5.1 of the General Construction specifications was to exclude the measurement and payment paragraphs within Sections 200 thru 800 of the KDOH Specifications as provided under paragraph two of the General Construction specifications. (R4, tab 17 at 1-2; SOF ¶ 3; Jt. Stip. ¶ 8)

11. On 31 May 2013, the CO issued a final decision denying Certified's claim in its entirety. The COFD asserted that the relevant technical provisions did not incorporate the KDOH Specifications in their entirety, and specific sections of the KDOH Specifications applicable to the contract were explicitly incorporated. Lastly, the CO asserted that measurement and payment paragraphs of the KDOH Specifications, including Section 109, did not apply. (R4, tab 18; Jt. Stip. ¶ 9)

12. On 16 July 2013, Certified appealed the 31 May 2013 CO's final decision to the Board (Jt. Stip. ¶ 10).

13. On 8 July 2014, the Board granted the government's partial motion to dismiss with respect to the portion of Certified's claim that accrued prior to 22 March 2007, more than six years before Certified's 22 March 2013 claim date. That portion of the appeal was dismissed for lack of jurisdiction under the CDA.

14. The parties stipulate that Certified's claim accruing after 22 March 2007 is for a sum certain amount of $606,707.55 (Jt. Stip. ¶ 12).

DECISION

On 8 July 2014, we issued our opinion, *Certified Construction Co. of Kentucky, LLC*, 14-1 BCA ¶ 35,662, partially dismissing the portion of Certified's claim accruing prior to 22 March 2007 for lack of jurisdiction because that portion was time-barred under the CDA's six-year statute of limitations (SOF ¶ 12). Subsequent to the issuance of our decision, the United States Court of Appeals for the Federal Circuit in *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315 (Fed. Cir. 2014), reversed its line of cases holding that the CDA's statute of limitations was jurisdictional. By correspondence dated 26 March 2015, we directed the parties to provide supplemental briefing on the effect of the *Sikorsky* decision on the parties' cross-motions for summary judgment. The government responded that *Sikorsky* did not impact the parties' cross-motions and "the rationale of the Partial Motion to Dismiss is still valid" (gov't supp. br. at 2). While asserting that the Board's 8 July 2014 partial dismissal was erroneous in light of the *Sikorsky* decision, Certified agreed that the cross-motions are ready for adjudication as *Sikorsky's* effect would bear on the issue of quantum rather than entitlement (app. supp. br.). After consideration of the parties' views and re-examining our 8 July 2014 decision, based on *Sikorsky* and the findings in our

5

decision, we conclude that on the merits, the portion of Certified's claim dismissed in that decision for lack of jurisdiction is properly time-barred by the CDA. We next proceed toward resolution of the parties' cross-motions for summary judgment.

### 1. *Summary Judgment*

Matters of contract interpretation are questions of law and are amenable for resolution through summary judgment. *Varilease Technology Group, Inc. v. United States*, 289 F.3d 795, 798 (Fed. Cir. 2002). The guidelines for summary judgment are well established; the granting of summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to favorable judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *DIRECTV Group, Inc. v. United States*, 670 F.3d 1370, 1374 (Fed. Cir. 2012); *Osborne Construction Co.*, ASBCA No. 55030, 09-1 BCA ¶ 34,083 at 168,512. The parties' cross-motions are evaluated on their own merits, and we are not obligated to "grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). While the parties have jointly stipulated that there are no genuine issues of material fact to their respective positions on the issue of contract interpretation, we are "not bound by the concessions or stipulations by either party that are contrary to the evidence or the law." *General Atronics Corp.*, ASBCA No. 37923, 91-3 BCA ¶ 24,047 at 120,360 (citing *Kaminer Construction Corp. v. United States*, 488 F.2d 980 (Ct. Cl. 1973)).

The movant has the burden to establish that there are no material facts in dispute. A material fact is one which may affect the outcome of the case. *Liberty Lobby,* 477 U.S. at 248. At the summary judgment stage, we do not resolve controversies, weigh evidence, or make determinations of credibility. *Id.* at 255. All reasonable inferences are drawn in favor of the nonmovant. *Id.*

### 2. *The Parties' Contentions*

The parties filed, with their cross-motions for summary judgment, a Joint Stipulation of Material Facts, and thus, aver that there are no genuine issues of material fact. The disputed matter is over the proper interpretation of subparagraph 5.1 of the General Construction specifications. Each party asserts that it is entitled to judgment as a matter of law, with each arguing that its respective interpretation of the subparagraph is plainly supported and reasonable. Certified largely contends that the subparagraph did not expressly exclude Section 109 of the incorporated KDOH Specifications upon which it relied as the basis for its claim. In reaching this interpretation, Certified argues that the intention of the first sentence of the subparagraph, which states "Measurement and Payment paragraphs shall not apply," was a limitation applicable to Sections 200 thru 800 of the KDOH Specifications, sections referenced under paragraph two of the General Construction specifications.

6

(App. mot. at 4-7) According to Certified, this is the correct reading because the CLINs in the contract contain unit pricing for the type of work to be accomplished in accordance with those specific KDOH Specifications (app. mot. at 7-8).

The government disagrees with Certified's interpretation, arguing that Certified's interpretation is unreasonable because it would render meaningless the exclusion of measurement and payment provisions explicitly stated in the first sentence of subparagraph 5.1. Additionally, the government argues that Certified's interpretation would subject the firm-fixed unit pricing in the contract to adjustments under the payment provisions in the KDOH Specifications inconsistent with the second sentence that states "[a]ll work shall be included in the unit price items listed." (Gov't mot. at 4-6) Therefore, the government contends that the only reasonable interpretation of subparagraph 5.1 is the express exclusion of any payment provisions in the KDOH Specifications, including Section 109 (gov't mot. at 6-7).

The parties also present alternative arguments if the underlying language of the subparagraph is deemed ambiguous, and they disagree as to the type of ambiguity. The government argues that any ambiguity regarding excepted contract provisions pertaining to "Measurement and Payment" should be considered patent, and imposing upon Certified the duty to inquire and seek clarification prior to submitting its bid for the contract (gov't mot. at 8). Certified counters that such an ambiguity should be considered latent, arguing that the ambiguity did not become apparent until Certified became aware of the CO's position concerning whether Section 109 of the KDOH Specifications was excluded (app. resp. to gov't mot. at 7). Certified argues that it should recover under the doctrine of *contra proferentem* as the ambiguity should be construed against the government (*id.*).

### 3. *Contract Interpretation*

Contract interpretation begins with examination of the plain language of the written agreement. *LAI Services, Inc. v. Gates*, 573 F.3d 1306, 1314 (Fed. Cir. 2009). The terms are given their plain and ordinary meaning. If the contract language is clear and unambiguous, the plain language controls, extrinsic evidence is not allowed to contradict the plain language, and resolution through summary judgment is amenable. *Coast Federal Bank, FSB v. United States*, 323 F.3d 1035, 1040 (Fed. Cir. 2003); *Pacific Coast Community Services, Inc.*, ASBCA No. 56754, 10-1 BCA ¶ 34,421 at 169,912. The contract terms are interpreted and read as a whole, giving reasonable meaning to all of its parts, and without leaving "a portion of the contract useless, inexplicable, void, or superfluous." *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004).

Contract language is clear and unambiguous when there is only one reasonable interpretation consistent with the plain meaning. *LAI Services*, 573 F.3d at 1314. A contract term is not rendered ambiguous just by the parties' disagreement as to the

7

interpretation alone; a party's respective interpretation "must fall within a 'zone of reasonableness.'" *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1999). If the contract language supports more than one reasonable interpretation, and the weighing of extrinsic evidence is required to determine the parties' intent to resolve the ambiguity, summary judgment is not appropriate. *MIC/CCS, Joint Venture*, ASBCA No. 58023, 14-1 BCA ¶ 35,678 at 174,637-38.

Ambiguities fall under two categories – an ambiguity is either patent or latent. If there is an ambiguity, the general rule of *contra proferentem* is to construe the ambiguous contract language against the drafter. *Metric Constructors*, 169 F.3d at 751. However, a patent ambiguity is an exception to the general rule where the ambiguity is "sufficiently glaring to trigger" a contractor to inquire before a bid is submitted. *HPI/GSA-3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004). The patent ambiguity is construed against the contractor. *Id.* If an ambiguity does not meet the patent ambiguity exception and is latent, the general rule may be applied, but the contractor's interpretation must be determined to be reasonable. *Id.*

4. *Analysis*

We agree that there are no material facts in dispute for these cross-motions, and the issue involves a matter of pure contract interpretation. Initially, we must determine whether the parties' interpretations are reasonable based on the plain language of the contract, and then, if more than one reasonable interpretation is supported, whether the existing ambiguity is patent or latent. Upon closer examination of the language within subparagraph 5.1 of the General Construction specifications, and taking into account that we must interpret the terms as a whole and give reasonable meaning to all parts of the contract, we find that the government's interpretation is the only reasonable interpretation of the subparagraph. It is clear that the KDOH Specifications were expressly incorporated by reference into the contract under paragraph one of the General Construction specifications. Subparagraph 5.1 contains the following two sentences: "Measurement and Payment paragraphs shall not apply. All work shall be included in the unit price items listed in the bid schedule that is part of these contract documents." (SOF ¶ 3) Generally, Sections 200 thru 800 of the KDOH Specifications contain separate paragraphs entitled "measurement" and "payment" for the type of construction work to be completed (SOF ¶ 4). Certified's interpretation that the measurement and payment paragraphs under these sections are excluded, but Section 109 entitled "MEASUREMENT AND PAYMENT" is not, is an inconsistent and unsupported reading, and hence, not within the "zone of reasonableness." First, Section 109, in and of itself, contains "measurement" and "payment" paragraphs, which the language of the first sentence in subparagraph 5.1 explicitly excludes. Certified relied on those "payment" paragraphs to calculate its REA and claim (SOF ¶¶ 8, 10). Second, subparagraph 5.1 falls beneath the heading of paragraph five, entitled "EXCEPTIONS TO KDOH SPECIFICATIONS." The KDOH Specifications include all sections, not just Sections 200 thru 800. Nothing in the plain language of

8

subparagraph 5.1 limits its application to Sections 200 thru 800 of the KDOH Specifications, and therefore, we determine that Certified's contrary interpretation is unreasonable as it conflicts with the plain language.

Further, even if we found *arguendo* that an ambiguity existed, Certified's pursuit for recovery would not prevail because we would consider the ambiguity patent. The contract as awarded did not include a provision providing for an economic price adjustment. CLINs 0072, 0073, 1072, and 1073 contained fixed-unit pricing for the work to be completed as described (SOF ¶ 5). For Certified to now argue that it could not know that Section 109 of the KDOH Specifications was excluded under the contract until the CO communicated his position is unpersuasive. Assuming without deciding that the language created an ambiguity, Certified had a duty to seek clarification prior to submission of its bid. Certified knew that the contract would be awarded through sealed bidding procedures, unit prices under the respective CLINs were fixed price, the contract lacked an express economic price adjustment clause, and subparagraph 5.1 of the General Construction specifications contained express language restricting the application of "measurement" and "payment" provisions of the incorporated KDOH Specifications. Thus, if Certified believed that Section 109 was not excluded, it was unreasonable for Certified to not seek clarification first due to the inconsistency between its interpretation and the face of the contract terms. Since Certified failed to do so, the patent ambiguity would be construed against Certified.

## CONCLUSION

We conclude that the government's interpretation of subparagraph 5.1 of the General Construction specifications, excluding all "measurement" and "payment" paragraphs of the KDOH Specifications, including Section 109, is the only reasonable interpretation for the reasons stated above. Therefore, we grant the government's motion and deny Certified's motion. The appeal is denied.

Dated: 12 August 2015

REBA PAGE
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

9

I concur                                    I concur



_____                   _____
MARK N. STEMPLER                            RICHARD SHACKLEFORD
Administrative Judge                        Administrative Judge
Acting Chairman                             Vice Chairman
Armed Services Board                        Armed Services Board
of Contract Appeals                         of Contract Appeals



      I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA No. 58782, Appeal of Certified
Construction Company of Kentucky, LLC, rendered in conformance with the Board's
Charter.

      Dated:



                                           _____
                                         JEFFREY D. GARDIN
                                         Recorder, Armed Services
                                         Board of Contract Appeals