# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of --            )
                                 )
JAAAT Technical Services, LLC       )      ASBCA No. 61180
                                 )
Under Contract No. W912HN-10-D-0063    )

APPEARANCE FOR THE APPELLANT:      Mr. Rickey B. Barnhill
                                               Administrator

APPEARANCES FOR THE GOVERNMENT:      Michael P. Goodman, Esq.
                                               Engineer Chief Trial Attorney
                                               Laura J. Arnett, Esq.
                                               Allie E. Vandivier, Esq.
                                               Engineer Trial Attorneys
                                               U.S. Army Engineer District, Savannah

## OPINION BY ADMINISTRATIVE JUDGE OSTERHOUT

This appeal arises from a dispute regarding Task Order No. 0001 (the task order) issued under Contract No. W912HN-10-D-0063 (the contract). The contract was a multiple award task order contract (MATOC) between JAAAT Technical Services, LLC (JAAAT or appellant), as well as other contractors, and the United States Army Corps of Engineers (USACE or the government). The task order was to construct a 13,940 square foot single-story administrative and training facility for the United States Air Force at Pope Army Airfield (Pope AAF). The dispute concerned whether installing an access control system was included in the contract or added as an out of scope change after contract award. Appellant claimed that it incurred $392,187.00 and 159 days of compensable time because the access control system was an out of scope change to the contract. The government disagreed and argued that the requirement existed in the task order at the time of award. The parties elected to submit the appeal on the written record pursuant to Board Rule 11. This decision only concerns entitlement. For the reasons set forth below, we deny the appeal.

## FINDINGS OF FACT

1. On January 30, 2012, USACE, on behalf of Pope AAF, sent a request for proposal (RFP) for the task order to six MATOC contractors, including JAAAT (R4, tab 3 at 94). According to the RFP, the scope of work included:

> The construction of an approximately 13,940 sq ft single
> story administrative and training facility for the assigned

U.S. Air Force unit. This project provides for a new concrete masonry unit facility with standing seam metal roof to house and facilitate the administrative and training functions for the 66th AOS, Det 1. Supporting facilities include site development & improvements, POV & unit parking space, Heating and Air conditioning systems, standard and secure information systems, electrical and water service coordination/connection with privatized utility owners, plumbing, fire protection and alarm systems, all in the provision of the facility space. Access for the handicapped is included in the design.

(R4, tab 3 at 95, tab 7 at 172)

2. According to the RFP, the general scope of work included:

The work covered by these specifications consists of furnishing all plant, labor, equipment, materials, and supplies, and of performing all operations in connection with subject project in strict accordance with these specifications and drawings and subject to the terms and conditions of the contract.

(Supp. R4, tab G-23 at 3249)

3. The contract contained clause 52.204-4004, CONTRACT ADMINISTRATION, which directed, "Administration of the delivery orders under this contract will be performed by the Contracting Office, _____. No changes, deviations, or waivers shall be effective without a modification of the contract executed by the Contracting Officer authorizing such changes, deviations or waivers." (R4, tab 9 at 350)

4. The contract contained Federal Acquisition Regulation (FAR) clause 52.243-4, CHANGES (JUN 2007), which stated in part:

(a) The Contracting Officer may, at any time, without notice to the sureties, if any, by written order designated or indicated to be a change order, make changes in the work within the general scope of the contract...

....

(b) Any other written or oral order (which, as used in this paragraph (b), includes direction, instruction,

2

interpretation, or determination) from the Contracting Officer that causes a change shall be treated as a change order under this clause; provided, that the Contractor gives the Contracting Officer written notice stating:

(1) the date, circumstances, and source of the order and

(2) that the Contractor regards the order as a change order.

(R4, tab 9 at 303)

5. The RFP included a Project Table of Contents, which referenced access control systems in Division 28, entitled "ELECTRONIC SAFETY AND SECURITY." Division 28 was divided into two sections: 1) 28 20 01.00 10, Electronic Security System; and 2) 28 31 76 Interior Fire Alarm and Mass Notification System. (Supp. R4, tab G-23 at 3247)

6. Specification 28 20 01.00 10 was entitled "ELECTRONIC SECURITY SYSTEM 10/07" and included a definition in section 1.2. This definition section included definitions for several access control system components, such as Entry Control Alarm, Identifier, Entry Control Devices, Facility Interface Device, Portal, Probability of Detection, and Standard Intruder. (R4, tab 4)

7. The RFP does not state anywhere that specification 28 20 01.00 10 was included for reference purposes only, or to simply provide information to construct wiring (supp. R4, tabs G-23, G-24).

8. Paragraph 1.2.9 of specification 28 20 01.00 10 defined "Identifier" as:

> A card credential, keypad personal identification number or code, biometric characteristic or any other unique identification entered as data into the entry control database for the purpose of verifying the identity of an individual. Identifiers shall be used by the ESS for the purpose of validating passage requests for areas equipped with entry control equipment.

(R4, tab 4 at 108) Further, in the "SYSTEM DESCRIPTION" section, this specification required the contractor to:

> Provide an Electronic Security System (ESS) as described and shown including installation of any Government Furnished Equipment. All computing devices, as defined

3

in 47 CFR 15, shall be certified to comply with the requirements for Class A computing devices and labeled as set forth in 47 CFR 15. Electronic equipment shall comply with 47 CFR 15.

(*Id.* at 109)

9. Part 2 of specification 28 20 01.00 10 concerned "PRODUCTS" and described what was required (R4, tab 4 at 120).

10. Specification 08 71 00 was also included in the contract. This section was entitled "DOOR HARDWARE 08/08" and included more specific instructions on what was required for installation on the doors. (R4, tab 5 at 154) At the end of this section was a paragraph labeled "3.6 HARDWARE SETS" which listed required hardware by door number. Nothing in the RFP stated that the door hardware listed in paragraph 3.6 was provided for reference only. This paragraph included "CARD READER PER SPECIFICATION 28 20 01.00 10" on several door numbers, including, 121A, 137A, 122A, 100A, 135A, 136A, 102A, 118A, 119A, 133A, 134A, 138A, 143A, 101A, 105A, 105B, 106A, 108A, 109A, 110A, 111A, 112A, 115A, 116A, 117A, 120A, 123A, 141A, 141B, 142A. This section also required some of the doors to contain "REQUEST TO EXIT BUTTON with CARD READER" as part of their hardware sets. Finally, the specification required door 122A to include "FINGERPRINT SCAN PER SPECIFICATION 28 20 01.00 10." (*Id.* at 162-64)

11. While most of the specifications listed in the Project Table of Contents were listed in the submittal register, some were not (supp. R4, tab G-23 at 3295-366). Ten specifications in Division 1, General Requirements, were not listed in the submittal register (*id.* at 3295-98). Division 25, Integrated Automation, was not listed in the submittal register (*id.* at 3348). Specification 28 20 01. 00 10 was not listed in the submittal register of the RFP (*id.* at 3354). However, specification 08 71 00 was specifically listed in the submittal register (*id.* at 3317).

12. The RFP also included "Floor Plan – Special Systems" drawing, with plate reference number EY110, which was labeled as Sheet 200 of 216. Drawing EY110 showed a general overview of the space, with door entries and references to other drawings, such as T-503 and T-505. Notes 5 and 6 directed the contractor to "FURNISH AND INSTALL" various access control systems, specifically regarding magnetic lock systems, push button controls, and releases. Note 7 limited work for items that would be supplied by others and stated, "PROVIDE TWO (2) 2" CONDUITS WITH PULL STRINGS FROM ANTENNA LOCATION ON EXTERIOR TO ABOVE CEILING IN CLASSROOM 142 AS INDICATED. CAP BOTH ENDS OF BOTH CONDUITS FOR FUTURE WIRING BY OTHERS." (R4, tab 6 at 165)

13. The door numbers from specification 08 71 00 were all annotated on drawing EY110. The numbers from specification 08 71 00 that reflect access control system components and were also on drawing EY110 are: HW#1 (121A); HW#2 (137A); HW#3 (122A); HW#4 (100A); HW#10 (135A); HW#11 (136A); HW#13 (102A, 118A, 119A, 133A, 134A, 138A, 143A); and HW#14 (101A, 105A, 105B, 106A, 108A, 109A, 110A, 111A, 112A, 115A, 116A, 117A, 120A, 123A, 141A, 141B, 142A). HW#10, with door 135A, depicted an outswinging double door on drawing EY110 that references drawing T-503. (R4, tab 5 at 162-64, tab 6 at 165)

14. The RFP included a "Communication Details" drawing, with plate reference number T-503, which was labeled as Sheet 206 of 216. Drawing T-503 contained the number 5 with a hexagon around it, labeled "Multi-technology card reader located where shown on plans." The drawing contained designs of four access points or doorways, two on each side of the page. It also referenced an intrusion detection system (IDS). Further, the drawing detailed where five enumerated items would be placed: 1) electric lock/exit device; 2) electric door hinge/lock; 3) request to exit motion sensor; 4) balanced magnetic switch; and 5) NEMA 1 Enclosure/Security Junction Box 6"x6"x4". Under the left side of the drawing, Detail 1, which is labeled "OUTSWINGING DOUBLE SWING DOOR," drawing T-503 contained a note that stated, "1. ALL DEVICES, CONTROLS, AND CABLES BY OTHERS. SHOWN FOR REFERENCE ONLY. JUNCTION BOXES AND CONDUITS ARE PART OF THIS PROJECT'S SCOPE." (R4, tab 6 at 166) As a result of these annotations, this portion of the contract does not apply to the access control system.

15. Under the right side of the drawing, Detail 2, which is labeled "OUTSWINGING SINGLE SWING DOOR," drawing T-503 contained notes that stated, "1. ALL DEVICES, CONTROLS, AND CABLES BY OTHERS, UNO. ACCESS CONTROL SYSTEM AS WELL AS JUNCTION BOXES AND CONDUITS FOR OTHER SYSTEMS ARE PART OF THIS PROJECT'S SCOPE. 2. REFER TO PLAN SHEETS FOR CARD READER LOCATIONS" (R4, tab 6 at 166).[1] JAAAT referenced these notes in its complaint but not in its opening brief (compl. at 2; app. br. at 2). JAAAT did not dispute the term "uno" or respond to the government's interpretation of the term. Thus, the term "uno" was understood by both parties to mean "unless noted otherwise."

16. The solicitation included "Communication Details" drawing, with plate reference number T-505, which was labeled as Sheet 208 of 216. Drawing T-505 contained additional drawings of secure and unsecure communications outlets. In the

---

[1] While "uno" was not defined in the contract, JAAAT did not contest the term so we find that JAAAT understood this term in the solicitation. The government defined "uno" in transmittal number 08 71 00-1.3 as "unless noted otherwise" (R4, tab 12 at 372).

Outswinging Single Swing Door box, the drawing notes two references to a "BIOMETRIC FINGERPRINT SCANNER" as well as several references to an "ACCESS CONTROL PANEL." The notes section informs, "1. ALL DEVICES, CONTROLS, AND CABLES BY OTHERS, UNO. ACCESS CONTROL SYSTEM AS WELL AS JUNCTION BOXES AND CONDUITS ARE PART OF THIS PROJECT'S SCOPE. 2. REFER TO PLAN SHEETS FOR CARD READER, MAG LOCK, KEY PAD, AND FINGERPRINT SCANNER LOCATIONS." (R4, tab 6 at 167) Again, JAAAT did not dispute the term "uno" or respond to the government's interpretation of the language.

17. On April 24, 2012, USACE awarded the task order to JAAAT, in the amount of $4,773,799.00 (R4, tab 7 at 168).

18. On May 31, 2012, the contracting officer (CO), issued a notice to proceed (NTP) and stated the contract duration was 540 calendar days. JAAAT signed the NTP as received on the same date. (R4, tab 8 at 178)

19. During the project, the government made remarks on several ENG Form 4025-Rs, Transmittal of Shop Drawings, Equipment Data, Material Samples, or Manufacturer's Certificates of Compliance. On November 6, 2012, for transmittal number 08 71 00-1, the government informed JAAAT that "[t]he hardware schedule needs to [be] submitted as shown on Section 08 71 00, 1.3 Hardware schedule. 3.6 Hardware Sets are the scheduled items to be installed. If the item is different/variation please give enough information for comparison." (R4, tab 12 at 369) On March 7, 2013, for transmittal number 08 71 00.1-1, the government informed JAAAT that the data submittal was not legible (*id.* at 370). On February 21, 2014, for transmittal number 08 71 00-1.2, the government informed JAAAT that it had not received the submittal hardcopy and requested resubmission (*id.* at 371).

20. On December 30, 2013, JAAAT submitted a Request for Information Report (RFI) where it asked, "To what extent does the USACE see the contractor[']s responsibility for the electronic security system in section 28 20 01.00 10 for the SOF training facility Ft. Bragg NC. The print says by 'others' which would not be the contractor." On January 15, 2014, the government answered, "The contractor is to provide and install all conduit, junction boxes, and pull strings. The user will provide all devices for the security system." (R4, tab 13 at 374) However, when the government answered, the boxes entitled "Answered By" and "Title" were left blank, so it was unclear who answered. The bottom of the form contained a note that stated:

> The RFI system is intended to provide an efficient mechanism for responding to contractor's requests for information. It does not provide authority to proceed with additional work. If the contractor considers the RFI

6

response a changed condition, provide written notice to the contracting officer's representative in accordance with contract provisions.

(*Id.*) JAAAT did not contact the contracting officer's representative (COR) concerning the information contained in the RFI answer until much later, after a submittal was rejected for JAAAT's failure to provide hardware for the access control system (supp. R4, tab G-4 at 2988).

21. The record reflects that the COR was Gary Poling. In paragraph 50 of the government's brief, the government references an email sent on March 18, 2014, which was "[t]he meeting minutes by USACE COR." (Gov't br. at 13) The email that the government references was sent by Mr. Poling and did not reference anyone else contributing to the email (R4, tab 16 at 390) The record does not demonstrate that Mr. Poling had contracting authority.

22. On March 5, 2014, the parties held a "Red Zone Meeting" which included talking point slides (R4, tab 14). Appellant stated, "USACE admitted at this meeting that [the access control system] was to be provided by the government" (app. br. at 3, ¶ 10). However, the record does not support this assertion. The reference appellant cited to, supp. R4, tab G-20 at 3155,[2] was minutes from the meeting on March 11, 2014.

23. On March 11, 2014, the parties held a "Red Zone Meeting" and the COR sent an email discussing the meeting. The email stated, in relevant part, "Access control is not part of the construction contract, only rough-in. User will pursue this." (R4, tab 15 at 388)

24. On March 18, 2014, the parties held another "Red Zone Meeting" and the COR sent an email, dated March 19, 2014, discussing the meeting. This email stated, in part, "Hardware and keying were discussed. This will be looked at and finalized as we move forward. It was clarified that access control in the interior of the facility is in the contractor's scope of work." Gregory H. Beers, the administrative contracting officer (ACO), was copied on the email. (R4, tab 16 at 390-91)

25. On March 31, 2014, on ENG Form 4025-R, transmittal number 08 71 00 1.3, the government informed JAAAT, "Much of required hardware is missing, per the hardware schedule in 08 71 00." Also in this response, the government notes, "Details such as Detail 2, T-503 indicate that 'All devices, controls and cables are by other UNO.'" The government also stated, "The next sentence notes otherwise, stating that

---

[2] Appellant cites to supp. R4, tab G-20 at 49. In order to maintain the integrity of the citations, we have chosen to use the consecutively-numbered pages instead of individual page numbers within a document.

7

'Access control system as well as junction boxes and conduit for other systems are part of this project's scope.'" The government also noted that the user indicated that some doors didn't need security and that the two parties could work together to make sure they both understood which doors required hardware. (R4, tab 12 at 372)

26. On April 2, 2014, appellant sent an email to the COR protesting the rejected hardware submittal. JAAAT detailed its position about why it believed the access control hardware was not included in the contract. JAAAT informed the government that it agreed that card readers were required per 28 20 01.00 10, which was entitled Electronic Security System, but that it was not responsible for items under specification 28 20 01.00 10 so it was not required to install card readers or other access control system components. JAAAT further stated that there was no access control specification in this contract. Specifically, JAAAT opined:

> (b) The hardware schedule does indicate that some doors will receive card readers and the hardware schedule is an appropriate place to indicate where they are to be installed by those responsible for this division of work. Our interpretation of the contract documents is that the card readers are both defined and required under specification section 28 20 01.00 10. As per RFI response #97, dated January 15, 2014 (see attached) "The contractor is to provide and install all conduit, junction boxes, and pull strings. The user will provide all devices for the security system." Our interpretation of the contract documents is that this is a device contained and required under specification section 28 20 01.00 10 entitled Electronic "Security System" and based on the response to RFI #97 we are not responsible for these devices.

(Supp. R4, tab G-5 at 3034)

27. On April 3, 2014, the COR responded to the April 2, 2014 email, informing JAAAT that the process for appealing a submittal is to resubmit the submittal. The COR informed JAAAT that it had no active submittal in hand and promptly reviewed the rejected one. The COR also anticipated that a letter resolving the disagreement would be forthcoming. (Supp. R4, tab G-6 at 3038-40)

28. On April 9, 2014, the ACO sent a letter to JAAAT, referencing "the hardware schedule in specification 08 71 00 where items of access control such as 'card reader' are required and referenced to section 28 20 01.00 10 for product details." The ACO also stated that the drawing referred to details on T-503 and T-505 where notes include the statement that access control systems were part of the project's

8

scope. The ACO further stated, "Your hardware schedule submittal did not include these items and was therefore rejected. We received your email on April 2 disagreeing with this action and have reviewed the contract documents in light of your comments." The ACO explained that "it is still the government's position that the items in specification section 28 20 01.00 10 are part of the access control system as noted in the specifications, plan and details, and are part of the project's scope of work." The ACO directed JAAAT to perform the contract and informed that it could file a request for equitable adjustment should it disagree with the decision. (R4, tab 19 at 2871)

29. On April 16, 2014, the parties exchanged emails concerning a "marked up specification 28.20.01" and JAAAT requested that the "mark-up" be scanned and sent electronically (R4, tab 20 at 2872-73). The parties discussed the significance of the handwritten note "IDS" next to paragraphs 2.4.1 and 2.4.1.1 (*id.* at 2872, 2902). Section 2.4.1 concerned an alarm annunciation local processor and 2.4.1.1 concerned the processor power supply (*id.* at 2902). Glenn Page, title unknown but from a USACE email address, stated, "The items indicated with IDS were X out and are not included in the access control per using agency security personnel." The "mark-up" also contained several paragraph numbers that were underlined as well. (*Id.* at 2872) In other areas of the RFP, IDS referred to the "intrusion detection system" rather than the access control system (*see* finding 14). The alarm annunciation local processor and the processor power supply were contained in the list of hardware from specification 08 71 00 and were not referenced on the door drawings (R4, tabs 5, 6).

30. On May 5, 2014, on ENG Form 4025-R, transmittal number 08 71 00-1.4, the government informed JAAAT, "Items shown in hardware schedule and specified in Specification Section 28 must be included and installed as part of the door system. Approval is contingent on those items being provided and installed per direction letter and subsequent clarification meetings." The government also directed JAAAT to switch the card reader and fingerprint reader on two doors. (R4, tab 12 at 373)

31. By May 21, 2014, JAAAT received a quote from Dynamic Systems Integration for $208,940.00 for the access control system. JAAAT continued to correspond with this potential subcontractor via email. (Supp. R4, tab G-10 at 3048) The quote provided by Dynamic Systems Integration included a spreadsheet for the items provided by door number. Dynamic Systems Integration provided quotes for all of the doors that required any access control. These included the doors in the following categories: HW#1, HW#2, HW#3, HW#4, HW#10, HW#11, HW#13 (multiple doors), and HW#14 (multiple doors). Dynamic Systems Integration did not quote any access control devices for the bathrooms and closets. (R4, tab 23 at 2938) These door categories matched precisely with the door categories and hardware set requirements by door number contained in specification 08 71 00 (R4, tab 5 at 162-64, tab 23 at 2938).

9

32. On May 31, 2014, JAAAT signed the subcontract with Dynamic Systems Integration. Dynamic Systems Integration did not sign the subcontract until July 21, 2014. (Supp. R4, tab G-13 at 3057)

33. The government considered the project "substantially complete" on September 22, 2014. Occupancy occurred on November 12, 2014. (R4, tab 21 at 2923)

34. On March 9, 2015, JAAAT submitted a request for equitable adjustment (REA) for 159 days of compensable time and $392,187.00 because of work performed by its subcontractor, Dynamic Systems Integration, for security and access control. The claim consisted of $208,941.00 for work performed by the subcontractor and $125,682.00 for work performed by JAAAT plus overhead, profit, and bond premiums. (R4, tab 23)

35. On April 29, 2015, the CO responded to the REA. The CO outlined the relevant portions of the contract to demonstrate the government's interpretation. The CO denied the REA in its entirety. (R4, tab 24 at 2974)

36. On May 7, 2015, JAAAT requested a CO's final decision relating to the April 29, 2015 letter from the CO (R4, tab 27).

37. On March 4, 2016, JAAAT filed a certified claim with the CO (R4, tab 25).

38. On April 14, 2016, the government completed ENG Form 93, Payment Estimate – Contract Performance, which stated that it was withholding funds for as-built drawings and an erosion control permit not being closed and it was assessing liquidated damages for 93 days at the rate of $1,757.61 per day, for a total amount of $163,457.73. (R4, tab 22 at 2925)

39. On February 27, 2017, the CO issued a final decision denying JAAAT's claim in its entirety (R4, tab 1 at 3).

40. On May 23, 2017, JAAAT appealed the final decision to the Board which was docketed as ASBCA No. 61180.

41. On January 16, 2018, both parties filed their opening briefs. On January 26, 2018, the government filed its response. JAAAT did not file a reply.

## DECISION

In this appeal, appellant seeks the Board's interpretation of the contract specifications and drawings relating to the installation of an access control system. "Contract interpretation is a question of law." *Centex Bateson Constr. Co. v. West,*

250 F.3d 761 (Fed. Cir. 2000) (citing *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997 (Fed. Cir. 1996)). "A threshold question is whether the plain language of the contract 'supports only one reading or supports more than one reading and is ambiguous.'" *James G. Davis Construction Corp.*, ASBCA Nos. 58000, 58002, 15-1 BCA ¶ 35,818 at 175,154 (citing *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004)).

"Whether a contract provision is ambiguous also is a question of law." *Grumman*, 88 F.3d at 997. "Ambiguity exists when contract language can reasonably be interpreted in more than one way." *LAI Services, Inc. v. Gates*, 573 F.3d 1306, 1314 (Fed. Cir. 2009) (citing *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1999)). "The contract terms are interpreted and read as a whole, giving reasonable meaning to all of its parts, and without leaving 'a portion of the contract useless, inexplicable, void, or superfluous.'" *Certified Constr. Co. of Kentucky, LLC*, ASBCA No. 58782, 15-1 BCA ¶ 36,068 at 176,131-32 (citing *NVT Technologies*, 370 F.3d at 1159). "Where the provisions of a contract are 'clear and unambiguous, they must be given their plain and ordinary meaning, and we may not resort to extrinsic evidence to interpret them.'" *Innoventor, Inc.*, ASBCA No. 59903, 17-1 BCA ¶ 36,798 at 179,355 (citing *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1040 (Fed. Cir. 2003)).

"Initially, we must determine whether the parties' interpretations are reasonable based on the plain language of the contract, and then, if more than one reasonable interpretation is supported, whether the existing ambiguity is patent or latent." *Certified Constr. Co. of Kentucky*, 15-1 BCA ¶ 36,068 at 176,132. The general rule is to construe ambiguous contract language against the drafter. *Metric Constructors*, 169 F.3d at 751. "The patent ambiguity doctrine, however, is an exception to the general rule that requires construing ambiguities against the contractor where the ambiguities are so patent and glaring that it is unreasonable for a contractor not to discover and inquire about them." *HPI/GSA 3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004) (citations and internal quotations omitted). "If an ambiguity does not meet the patent ambiguity exception and is latent, the general rule may be applied, but the contractor's interpretation must be determined to be reasonable." *Certified Constr. Co. of Kentucky*, 15-1 BCA ¶ 36,068 at 176,132 (citing *HPI/GSA*, 364 F.3d at 1334).

However, if the ambiguity is so glaring that it meets the patent ambiguity exception, that patent ambiguity "triggers a duty on behalf of a public contractor to inquire about that ambiguity before it even bids on a contract." *P.R. Burke Corp. v. United States*, 277 F.3d 1346, 1355 (Fed. Cir. 2002) (citations omitted). "Absent such inquiry, a patent ambiguity in the contract will be resolved against the contractor." *Triax Pacific, Inc. v. West*, 130 F.3d 1469, 1475 (Fed. Cir. 1997) (citations omitted).

Here, the parties disagree over whether the contract required an access control system. The government argues, "The Contract Specifications clearly required

11

JAAAT to provide both hardware for and installation of the access control system" and that the number of times the access control system was referenced in the specification and contract demonstrated that an access control system was required by the contract (gov't reply br. at 1, 5). JAAAT argued that the government did not require the access control system because: (1) specification 28 20 01.00 10 was not within the scope of the project and was provided for reference only; (2) drawing T-503 included a note that stated that the access control system would be provided by others; and (3) the government informed JAAAT that it was not required to install an access control system. We agree that the only reasonable interpretation of the contract is that the access control system was part of the contract, that drawing T-503 is not ambiguous, and that the government communications did not result in changing the contract requirements.

The Record Does Not Demonstrate that Specification 28 20 01.00 10 was Provided for Reference Only

Appellant first contends that the access control system that was described in specification 28 20 01.00 10 "was not within JAAAT's scope of work in the bid" (app. br. at 2). Appellant also states that the information in specification 28 20 01.00 10 was only provided for reference so that JAAAT could install the proper door hardware and the specification was provided so that the installed components would work together (*id.* at 6). We understand appellant's argument that the specification information was only provided to allow JAAAT to install the wiring for the devices to be connected. However, the record does not support this position.

The government did not at any point in the RFP state that the access control system specifications were included simply for the purpose of alerting JAAAT to what components would be later added by a different entity so that JAAAT was only responsible for the wiring (*see* finding 7). Further, references to the access control system were contained in several locations within the contract. Most explicitly, specification 28 20 01.00 10 discussed the access control system and was included in the contract (findings 5-9).

We understand that the submittal register did not include anything from specification 28 20 01.00 10 and that this may have led JAAAT to question whether it was included in the contract; however, specification 08 71 00 was listed in the submittal register and contained references to specification 28 20 01.00 10 (finding 11). Specification 08 71 00 included paragraph 3.6, entitled "Hardware Sets" and listed hardware required by door number. Several hardware sets included "CARD READER PER SPECIFICATION 28 20 01.00 10" in their lists as well as other items required for an access control system. (Finding 10)

12

The contract drawings also contained several references to the required access control system (findings 12-16). Drawing EY110 included notes directing where access control systems were located (findings 12-13). The door numbers matched the numbers contained in specification 08 71 00 (finding 13). Several locations on drawings T-503 and T-505 contained references that stated, "Access control system as well as junction boxes and conduits for other systems are part of this project's scope" (findings 15-16). While the requirement to provide an access control system was not highlighted, it was contained within the four corners of the contract.

Additionally, the contract terms are required to be read and interpreted as a whole, without rendering a portion of the contract useless or inexplicable. *Certified Constr. Co. of Kentucky*, 15-1 BCA ¶ 36,068 at 176,131-32 (citing *NVT Technologies*, 370 F.3d at 1159). If we read the contract to not require specification 28 20 01.00 10, the notes on all of the other drawings and specification 08 71 00 and the hardware lists would be rendered useless or inexplicable.

.

Finally, JAAAT's subcontractor's quote supports the position that the requirement is in the specification. Appellant hired Dynamic Systems Integration for the access control system (findings 31-32). Dynamic Systems Integration provided a quote that contained a chart. This chart matched the requirements listed in the hardware table from specification 08 71 00. (Finding 31)

Thus, the only reasonable meaning in the contract at issue in this appeal, when the contract terms are interpreted and read as a whole, is that the contract required the access control system and required compliance with both specification 08 71 00 and 28 20 01.00 10.

No Ambiguity Exists in Contract Drawing T-503 Notes

Although we determined that the access control system is included in the contract, we have considered JAAAT's second argument concerning whether any ambiguities existed within the RFP that might have led to a different outcome. Appellant's second argument specifically concerned contract drawing T-503 and whether the drawing created an ambiguity for which appellant would be entitled to recovery. Appellant argued that drawing T-503, specifically regarding the swinging double doors, included a note that stated "All devices, controls, and cables by others. Shown for reference only. Junction boxes and conduits are part of this project's scope." This statement is the one place in the drawings that appellant highlighted in order to support its theory that only basic door hardware or wiring for additional components to be provided by others was required and that the access control system was outside of the scope of the project. (Finding 14) While other portions of the drawings contain language concerning the access control system, the left side of drawing T-503, Detail 1, is the only drawing that JAAAT references. JAAAT failed to explain how it interpreted contradictory notes in other drawings that specifically stated

13

the access control system was within the scope of the contract, including direction that an access control system is within the scope of this contract, located on the same drawing. (App. br. at 2; findings 12, 15-16) Instead, JAAAT appeared to argue that this one note applied across the board to all entry points for anything that dealt with an access control system.

The government, in its reply, responded that Detail 1 of drawing T-503 actually referenced the intrusion detection system (IDS), not the access control system. As evidence, the government stated that the access control system was referenced in note 1 for Detail 2 of the same drawing. (Gov't reply br. at 2)

We fail to see how appellants contentions regarding drawing T-503 create an ambiguity. Accordingly, appellant's arguments must fail.

The Impact of Communications by Government Personnel on the Contract

JAAAT argues that government personnel, other than the CO, directed that an access control system was not part of the contract and was not within the scope of the contract (app. br. at 3-4). JAAAT provided instances of government communications that JAAAT interpreted as directions concerning the requirement to provide an access control system that was not part of the scope of the contract, including meetings, emails, and RFI communications.

First, JAAAT relies upon the RFI submitted on December 30, 2013, in which JAAAT asked about its responsibility for section 28 20 01.00 10. The government appeared to have answered on January 15, 2014 stating, "The contractor is to provide and install all conduit, junction boxes, and pull strings. The user will provide all devices for the security system." However, the name and title of the sender were left blank in the response. (Finding 20) The fact that this RFI answer was blank in the person and title sections should have been an indicator to appellant that this had not been approved by anyone with authority and should have alerted appellant to conduct further inquiries from the CO.

JAAAT placed an unreasonable amount of weight upon the unsigned RFI answer without addressing further communications that happened before and after that particular December 30, 2013 RFI. Between November 2012 and February 2014, a number of other communications occurred, many in the form of ENG Form 4025-Rs that referenced specification section 08 71 00, concerning door hardware requirements for the access control system (finding 19). Of particular note, on November 6, 2012, during the first six months of the contract (*see* findings 17-18), and over a year before JAAAT submitted the RFI upon which it heavily relies, the government reiterated the requirement for JAAAT to provide the hardware items in specification 08 71 00 in an ENG Form 4025-R, several of which involved the access control system. On the ENG Form 4025-R, the government

14

stated, "3.6 Hardware Sets are the scheduled items to be installed. If the item is different/variation please give enough information for comparison." (Finding 19)

Further, on March 31, 2014, the government included details of why the access control system was required in an ENG Form 4025-R concerning missing hardware. The government pointed to multiple areas in the contract that directed that the access control system was required. (Finding 25)

Finally, on ENG Form 4025-R, transmittal number 08 71 00-1.4 dated May 5, 2014, the government stated that items were missing that were demonstrated in the hardware schedule (which was section 08 71 00) and specification section 28. The government further stated that approval was contingent upon those items being provided and installed. (Finding 30)

Second, JAAAT directed attention to an email from the COR concerning a "Red Zone Meeting" dated March 11, 2014. The email contained the statement, "Access control is not part of the construction contract, only rough-in. User will pursue this." (Finding 23) However, on March 18, the parties held another "Red Zone Meeting" and the COR sent an email afterwards clarifying the access control system that stated, "Hardware and keying were discussed. This will be looked at and finalized as we move forward. It was clarified that access control in the interior of the facility is in the contractor's scope of work." This email copied the ACO. (Finding 24)

Third, a series of communications occurred in April 2014. On April 2, 2014, JAAAT attempted to appeal an RFI concerning the access control system and informed the government that the access control hardware was not included in the contract (finding 26). On April 3, 2014, the COR responded that the way to appeal an RFI was to resubmit the RFI (finding 27). On April 9, 2014, the ACO sent a letter to JAAAT, directing it to places within the contract where the access control system was required (finding 28).

Further, even if we extend the argument and analyze whether JAAAT is entitled to recovery because the government personnel changed the existing contract by descoping the requirement to provide an access control system, the record does not show that any changes were made to the contract by the CO. The contract clearly contained provisions concerning contract administration and changes which required the CO to authorize changes (findings 3-4). Appellant stated that the government indicated in meetings with the customer that the access control system was not required by JAAAT (findings 25-26; app. br. ¶¶ 10-11). However, the CO was not present at these meetings and the user had no authority to change the terms of the contract. Within one month of the discussions occurring and within one week of receiving an email from JAAAT, the ACO sent written direction to JAAAT to clarify any discrepancy over whether an access control system was part of the contract (finding 28). Thus, the communications between the government

15

and JAAAT did not remove the access control system requirement from the contract and did not create a contract change.

CONCLUSION

The appeal is denied.

Dated: April 3, 2019

HEIDI L. OSTERHOUT
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61180, Appeal of JAAAT Technical Services, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals